**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Mose Clair JOHNSON, Defendant-Appellee.**

**No. 71-1763.**

United States Court of Appeals, Tenth Circuit.

June 12, 1972.

Rehearing Denied July 10, 1972.

Jeff R. Laird, First Asst. U. S. Atty. (William R. Burkett, U. S. Atty., on the brief), for plaintiff-appellant.

Rollie D. Thedford, Oklahoma City, Okl., for defendant-appellee.

Before BREITENSTEIN, SETH and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Pursuant to 18 U.S.C. § 3731, the government appeals from orders of the district court suppressing evidence and dismissing the indictment. The defendant was charged with possession of counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472. The issue hinges on the reasonableness of a search of a passenger in an automobile which had been stopped for violation of an Oklahoma City, Oklahoma, ordinance.

About 3:00–3:30 A.M. on July 14, 1971, two police officers observed a car apparently being operated in violation of a local anti-noise ordinance. A defective muffler was suspected to be the cause. Their attention was called to no other defects in the car or in its operation. After the car was stopped, officer Dawson approached it and found the driver and his wife in the front seat; the defendant was in the rear seat. The officer asked the driver for his operator's license. The driver replied that his license had been taken for a previous traffic violation. See 22 O.S.A. §§ 1114.1 and 1114.2. The officer told the driver to accompany him to the patrol car where, after he was patted down, he was placed inside. The driver's wife then appeared at the patrol car and exhibited a traffic citation which had been issued to her husband. Apparently everything checked out. The officer described the driver and his wife as cooperative. Officer Dawson then left the driver and his wife under the supervision of Officer Perkins and returned to the stopped car where he asked the back-seat passenger, defendant herein, for identification. Defendant said that he had no identification. The officer told the passenger to get out of the car. His explanation was that he wished to run a check on the defendant.

The officer took the defendant to the patrol car where he patted and frisked him. The officer testified that this was a usual safety precaution before putting a person in a patrol car. In the course of the frisk of the defendant, the officer felt a "large object" in the right coat pocket. Upon examination the object was found to be a large quantity of off-color Federal Reserve Notes which contained several notes bearing the same serial number. The defendant was arrested for possession of counterfeit money. The driver was charged with operating defective equipment.

The stopping of the car occurred in a business district containing several restaurants and bars. The officer described it as a "high-crime" district but the incidence of crime does not appear in the record. The officer said that he was aware of the killing of a fellow officer about a mile and a half away about a month previously. Also he was aware of a robbery which had occurred the previous night in Oklahoma City, and he said that he was "curious."

The trial court in sustaining the motion to suppress said that the officer had no probable cause to arrest the defendant and no right to search him. In our opinion, legality of the arrest is not the criterion. In Terry v. Ohio, 392 U. S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L. Ed.2d 889, the Court said that determination of whether a "stop-and-frisk" search was unreasonable requires inquiry "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the

circumstances which justified the interference in the first place." The Court described the objective standard to be whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Ibid. at 21–22, 88 S.Ct. at 1880. In construing Terry v. Ohio, we have said, United States v. Saldana, 10 Cir., 453 F.2d 352, 354:

> " * * * under appropriate circumstances, police officers in the course of their duties may approach and question persons as to possible crimes and investigate suspicious behavior, even though there are insufficient grounds for arrest."

■ The issue is whether in the case at bar "appropriate circumstances" justify the officer's actions. Nothing connects the defendant with the defective car except that he was a passenger in it. The officer did not testify that at the time he requested him to get out of the car he had any suspicion that defendant had committed any crime. His "curiosity" in that regard was aroused later. In any event curiosity does not equate with reasonable suspicion. The record discloses nothing to indicate that the officer, when he ordered defendant out of the car, had any reason to believe that there was any danger to anyone's safety. Cf. Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. 1868.

We are not impressed with the government's reliance on Hurst v. United States, 9 Cir., 425 F.2d 177, cert. denied 400 U.S. 843, 91 S.Ct. 86, 27 L.Ed.2d 78. There, officers had a warrant for the arrest of one man but did not know which of two men in a car was the person named in the warrant. Accordingly, they arrested both and in the process patted down the passenger who was not the subject of the warrant.

The court noted that in such circumstances there was authority for the arrest of both and that in the process of the arrest of the one named in the warrant the pat-down of the other was necessary for the officers' protection. Ibid. at 178. Our case is different. We are concerned with events incident to a traffic violation, not the service of a warrant.

Carpenter v. Sigler, 8 Cir., 419 F.2d 169, is not persuasive. In that case a passenger was arrested after police had seen an unidentified car with out-of-county plates driving slowly in a small town that had been plagued with a series of burglaries. The car had been under surveillance. In the case at bar, the officers were attracted to the car by the defective muffler and immediately stopped it. The area was well-lighted, there was no evidence of recent criminal activity, and nothing gave any indication that the occupants of the car might be dangerous.

The case most analogous to ours is Williams v. Adams, infra. In that case there was an arrest of a passenger in a car which had been stopped during the early morning hours in a "high crime" area. A gun was found in the passenger's waistband. A panel of the Second Circuit, with one dissent, upheld the search and seizure. Williams v. Adams, 2 Cir., 436 F.2d 30. On rehearing en banc the court held that there was neither probable cause for the passenger's arrest nor sufficient cause for reaching into his waistband. 441 F.2d 394, cert. granted 404 U.S. 1014, 92 S.Ct. 670, 30 L.Ed.2d 661.

■ We are concerned with a situation where, at the time of the stop, the officers had nothing to arouse their suspicions except the noise. They had observed no previous conduct of the occupants. The driver and his wife were cooperative. Nothing suggests that the officers had grounds for belief that criminal activity was afoot or that the occupants of the car were armed and dangerous. In the narrow circumstances of the case before us we find no justification for the frisk of the defendant. The motion to suppress was properly sustained.

■■ After the motion to suppress had been sustained, the defendant moved for dismissal of the indictment on the ground that the suppressed evidence was essential to the trial of the charge. The government did not file a written response. The court held that the suppressed evidence was essential to the government's case and dismissed the indictment "without prejudice to re-indictment in the event of appellate reversal" of the suppression order. Ordinarily, indictment dismissal is not proper after the suppression of evidence because the government may have other sufficient evidence to sustain the charge. Decisions concerned with dismissal because of the use of incompetent evidence before the Grand Jury, e.g. United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510, are not in point because the record does not disclose what was presented to the Grand Jury. Here we have a finding that the suppressed evidence was essential to the government case. In this court the attorney for the defendant stated in his brief that at the hearing on the motion to dismiss the government conceded that it could not proceed to trial without the suppressed evidence. The government does not contend otherwise. Although we believe that the better practice would have been to deny the motion to dismiss and then await the appellate outcome, the circumstances presented are such that we cannot say that the trial court abused its discretion in dismissing the indictment. See e. g. United States v. Tane, 2 Cir., 329 F.2d 848, 853–854.

Affirmed.

## ON PETITION FOR REHEARING

The petition for rehearing points out that, on the day the opinion was filed in this case, the Supreme Court reversed Williams v. Adams, 2 Cir., 441 F.2d 394. See 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612. This action does not change the result which we reached. In the Williams case the facts, as outlined in the Supreme Court opinion, were that the officer had obtained a tip from a known informant that an individual seated in a nearby automobile was carrying narcotics and had a gun at his waist. Also the individual refused to comply with the officer's request to get out of the car. In the case at bar, we have a routine traffic violation with no information, or reason to suspect, that the occupants of the car were engaged in other criminal activity, were armed or were dangerous. Cf. United States v. Humphrey, 10 Cir., 409 F.2d 1055, 1057–1058. We are convinced that in the circumstances presented here, there was no justification for the frisk search. The petition for rehearing is denied.