515 P.2d 1185

**The STATE of Arizona, Appellee,**

v.

**Robert Earl MAYES, Appellant.**

**No. 2 CA–CR 332.**

Court of Appeals of Arizona,
Division 2.

Nov. 12, 1973.

Rehearing Denied Dec. 19, 1973.

Review Granted Jan. 22, 1974.

Gary K. Nelson, Atty. Gen., by John S. O'Dowd and Howard L. Fell, Asst. Attys. Gen., Tucson, and Frank Leto, Certified Third Year Law Student under Rule 25e, for appellee.

Ed Bolding, Pima County Public Defender by Wm. G. Lane and Richard Van Duizend, Asst. Public Defenders, Tucson, for appellant.

## OPINION

HOWARD, Judge.

On July 12, 1972, appellant-defendant, Robert Earl Mayes, was arrested by two Tucson Police Officers and charged with unlawful possession of dangerous drugs. The facts leading to the arrest taken in the light most favorable to the State are as follows. The officers were walking through Himmel Park when they noticed the defendant who was seated and smoking a hand rolled cigarette. Thinking this cigarette might contain marijuana, the officers started to walk towards the defendant. They testified that as they approached him they concluded by the appearance and smell of the cigarette that it was merely tobacco. Upon reaching the defendant, one of the officers asked him to show some identification.

The officers further testified that when the defendant stood up he weaved a little bit, was unsteady, and his eyes appeared red. The defendant took from three to five minutes to produce some identification. One of the officers then asked him "What are you high on?" The defendant handed the officers a bottle of pills containing dangerous drugs. When asked if he had a prescription for the pills, the defendant answered in the negative whereupon he was arrested.

At trial the pills and the defendant's admission that he had no prescription were allowed into evidence over defendant's objection. The jury found the defendant guilty of possession of dangerous drugs and he was sentenced to four and one-half years in the Arizona State Prison. This appeal followed.

■ Appellant contends that the trial court should have excluded the pills and his statements to the police officers because they were obtained in violation of his constitutional right against unreasonable searches and seizures. He maintains that at the time the officers accosted him he was "seized" within the meaning of the Fourth Amendment.

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

At trial one of the officers was asked: "During the period of time you asked for identification was he free to walk away?" The answer was "No, he was not." We must therefore conclude that appellant had been "seized".

■ This court in State v. Baltier, 17 Ariz.App. 441, 498 P.2d 515 (1972), adopted the following test to determine whether a forced stop for interrogation or investigative purposes is "reasonable". "There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime." We fail to see how sitting in a park in the middle of the afternoon, smoking what the officers knew was a hand rolled cigarette containing tobacco satisfies this test.

■ The State contends that because the officers had received information that narcotics transactions were taking place at the park that the Baltier test has been met. We do not agree. "That innocent activity occurs in a high crime area provides no basis for converting innocuous conduct into suspicious conduct." United States v. Mallides, 9·Cir., 473 F.2d 859 (1973). The evidence to which appellant objected should have been excluded.

■ Appellant also contends that the admission of evidence of a prior felony conviction imposed an unreasonable burden on his right to testify and was a denial of due process. The rule in Arizona is that a witness' credibility may be impeached by a prior felony conviction. This rule was recently upheld in the case of State v. King, 110 Ariz. 361, 514 P.2d 1032 (filed October 9, 1973). The admissibility of a prior conviction for impeachment purposes is generally left to the sound discretion of the trial court, taking into account such factors as the length of time which has elapsed, the length of the former imprisonment, subsequent conduct and present age of the witness, intervening circumstances and the nature of the prior offense. State v. King, supra. This rule has been justly criticized. McCormick on Evidence § 43.[1] At common law the conviction of a person for an infamous crime rendered the convicted person altogether incompetent as a witness.

---

1. See also, Comment "Other Crimes Evidence at Trial: Of Balancing and Other Matters," 70 Yale Law Journal 763, 778 (1961); Note, "Procedural Protections of the Criminal Defendant—a Re-evaluation of the Privilege Against Self Incrimination and a Rule Excluding Evidence of Propensity to Commit Crime", 78 Harvard Law Review 426, 440 (1964).

This illogical and draconian rule has been eliminated by statute in practically all the common law world. Although one who had been convicted of a felony is now competent to testify in court, the prior conviction can be used to impeach him. The prevailing rule can be and is highly prejudicial. As stated by McCormick on Evidence, supra, page 93:

"The sharpest and most prejudicial impact of the practice of impeachment by conviction . . . is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a 'record' of past convictions, particularly if they are for crimes similar to the one on trial, the danger is obvious that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to its legitimate bearing on credibility. This places the accused, who has a 'record' but who thinks he has a defense to the present charge, in a grievous dilemma. If he stays off the stand his silence alone will prompt the jury to believe him guilty. If he elects to testify, his 'record' becomes provable to impeach him, and this again is likely to doom his defense. Where does the balance of justice lie? . . ."

The danger that a person will be convicted on the basis of his past record introduced for impeachment purposes rather than on the factual situation of the present case is more real than illusory. As stated by Justice Jackson in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949), "the naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be an unmitigated fiction." Jury examinations conducted by the University of Chicago indicate that jurors do not segregate evidence introduced for impeachment purposes. These tests disclose that jurors have an almost universal inability and/or unwillingness either to understand or follow the court's instructions on the use of a defendant's prior criminal record for impeachment purposes. The jurors almost universally use the defendant's record to conclude that he was a "bad man" and hence was more likely than not guilty of the crime for which he was on trial.[2] To inform the jury in a rape case that the defendant has a prior rape conviction and then instruct them to consider the conviction only in evaluating the defendant's credibility is to recommend "a mental gymnastic which is beyond, not only their powers, but anybody's else." [3] As the United States Supreme Court stated in Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968):

". . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."

In State v. Santiago, 53 Hawaii 254, 492 P.2d 657 (1971), the Supreme Court of Hawaii stated:

"It has long been recognized that every criminal defendant has a right to testify in his own defense. That right is 'basic in our system of jurisprudence' and implicitly guaranteed by the Due Process Clause of the Fourteenth

---

2. Letter from Dale W. Broeder, Associate Professor, The University of Nebraska, College of Law, who conducted intensive jury interviews, to Yale Law Journal, dated March 14, 1960, on file in the Law Yale Library. See also a letter from Harry Kalven, Jr., Professor, The University of Chicago Law School, who also conducted the interviews, dated March 7, 1960, on file in the Yale Law Library (our data 'suggests that the jury, like everybody else, had enormous difficulty in understanding what it means to use evidence on impeachment only and not on guilt.').

3. Justice Learned Hand in Nash v. United States, 54 F.2d 1006, 1007 (2nd Cir. 1932).

Amendment. [citations omitted] While technically the defendant with prior convictions may still be free to testify, the admission of prior convictions to impeach credibility 'is a penalty imposed by courts for exercising a constitutional privilege.' [citation omitted] That penalty 'cuts down on' the right to testify 'by making its assertion costly.' [citation omitted] . . . "

If there was some value outweighing the burden imposed on the defendant's right to testify, the admission of prior crimes to impeach credibility could be sanctioned. It is apparent that prior convictions are of little real assistance to the jury in determining whether the defendant is credible as a witness. When the prior crime has nothing to do with dishonesty, there may be no logical connection whatsoever between the prior crime and the determination of whether the defendant may be believed. Since the jury is presumably qualified to determine whether or not a witness is lying from his demeanor and his reaction to probing on cross-examination, there would appear to be little need for evidence of prior convictions. Thorough cross-examination as to the facts should be able to raise doubts not merely about the defendant's general truthfulness, but more importantly, about the credibility of the story he has told in a particular case.

The impeachment rule cannot be justified by the defendant's freedom to keep out the damaging evidence by staying off the stand, for that freedom is limited by his desire to prove his innocence as well as by fear of the inference that is likely to arise from failure to testify. By threatening the defendant with the introduction of prior convictions, the rule creates the danger of unjust convictions either directly through the effect of such evidence on the jury or indirectly by keeping the defendant off the stand. Furthermore, it allows the introduction of prior criminal conduct that is directly relevant neither to propensity nor to credibility, and consequently can only be unfairly prejudicial.

In State v. Santiago, supra, the Supreme Court of Hawaii held that the introduction of prior convictions in a criminal case to prove the defendant's testimony is not credible violates the Fourteenth Amendment of the United States Constitution. A more moderate view would be to allow into evidence for impeachment purposes convictions of crimes involving dishonesty and false statements, such as uttering forged instruments, bribery, suppression of evidence, false pretenses, cheating and embezzlement. The rule as it now stands creates a fairytale world of judicial legerdemain. Since we are not in a position to overrule our Supreme Court, we urge a serious reexamination of the rule.

Since, as hereinabove indicated, the admission into evidence of appellant's statements and the bottle of pills was erroneous, reversal is required.

Reversed.

KRUCKER, J., concurs.

HATHAWAY, Chief Judge (specially concurring).

Because of the majority's observations concerning the admission of evidence of a prior felony conviction, I concur specially. I agree with the result and the ratio decidendi therefor.

It is my view that the trial court is not strait-jacketed on the question of the admission of evidence of a prior felony conviction, but indeed has discretion with reference to its reflection upon one's credibility. In considering the prior conviction's usefulness for the purpose offered, its remoteness, State v. King, 110 Ariz. 361, 514 P.2d 1032 (filed October 9, 1973), and the nature of the prior offense are to be taken into account. State v. Ross, 107 Ariz. 240, 485 P.2d 810 (1971). It further strikes me as inappropriate to criticize an asserted rule when the case has been reversed on another point. The commentary is sheer gratis dictum on a question that has become moot.