524 P.2d 513

**Melvin Otho REED, Petitioner,**

v.

**The Honorable Robert O. ROYLSTON, Judge of the Superior Court, in and for the County of Pima, Respondent; and The STATE of Arizona, Real Party In Interest.**

**No. 2 CA–CIV 1678.**

Court of Appeals of Arizona, Division 2.

July 18, 1974.

John M. Neis, Pima County Public Defender, by Norman R. Freeman, Asst. Public Defender, Tucson, for petitioner.

Dennis DeConcini, Pima County Atty., by James D. Himelic, Tucson, for respondent.

## OPINION

KRUCKER, Judge.

Petitioner, defendant in a criminal prosecution below, seeks relief in this court by way of special action from a denial of his motion to suppress certain evidence allegedly illegally seized.

The testimony presented at the hearing on the motion to suppress is as follows. At approximately 3:00 p. m. on October 29, 1973, two police officers who had been patrolling the Fourth Avenue area in downtown Tucson received a radio call from a TAC officer.[1] The call advised the police officers that petitioner was parked across the street from a park located in the vicinity of Fourth Avenue and Second Street; also, that petitioner had been known in the past to carry concealed weapons. The TAC officer advised the officers in the patrol car to approach petitioner and fill out a field interview card.

The officers parked their vehicle to the rear of petitioner's vehicle in which petitioner was sitting on the driver's side with the windows rolled down. There was no one else in the car nor was anyone within the vicinity of petitioner's vehicle. According to one of the officers, he knew that petitioner had previously been involved in narcotics violations, that the park was the location young adults used as they passed through town, and that numerous narcotics violations had occurred in that area.

When the officers approached petitioner's vehicle, one of them asked for identification, which petitioner immediately produced. He was very cooperative, did not appear to be nervous, and acted in no unusual fashion. After petitioner produced his identification, the officer asked him to step from the vehicle, which he did immediately. As petitioner exited from his car, the officer noticed a bulge in his left, front pocket, whereupon he asked petitioner what he had in the pocket. (According to the officer, the bulge was about the size of a golf ball.) Petitioner thereupon placed his left hand in the pocket and said, "Nothing". The officer directed petitioner to remove his hand "real slow". Petitioner patted down his right pocket, stuck his hand in it and partially withdrew the material of the pocket. The officer observed nothing in the right pocket, but petitioner continued to keep his left hand in his left pocket. The officer than said, "Melvin, this is the last time I'm telling you to take your hand out of your pocket", whereupon petitioner broke away and ran. The officers then jumped on him and forced him to the road, face down, and handcuffed him. In petitioner's left hand was a bag containing a white powder.[2]

On cross-examination by defense counsel, one officer stated that he told petitioner, "Melvin, there is going to be problems if you don't take your hand out very slowly." When asked what he meant by such a statement, he responded:

"To me, the fact that he was—that he would stick his hand in there and deny there was something in there, in the pocket, and it put the idea in my mind there was something there that he didn't want me to see."

He admitted that he had not run a "Records" check on petitioner prior to leaving the patrol car. He also stated that he knew the area to be occasionally frequented by hippies and to have had a drinking problem; also, that petitioner was not drinking in his car nor did it appear to him that he was associated with any of the people in the park at the time the officers

---

1. A TAC officer is a plainclothes policeman involved in surveillance-type activity.

2. The motion to suppress was directed to evidence obtained by a search of petitioner's person after his arrest.

approached him. The following testimony was elicited from the officer concerning his request that petitioner remove his left hand from his pocket:

"Q. Can you tell us why you asked Mr. Reed to take his hand out of his pocket, meaning his left pocket?

A. Because I felt he possibly could have had or that the pocket could have contained a weapon in the pocket.

Q. Upon what do you base that feeling?

A. The information received that Melvin had priors for carrying concealed weapons, and it was not beyond the realm of possibility that there was a weapon in the pocket."

And:

"Q. Why did you grab Mr. Reed when he ran?

A. I figured he had a concealed weapon in his pocket, or he had narcotics."

The pivotal question here is whether the initial detention of petitioner was "reasonable". In State v. Baltier, 17 Ariz.App. 441, 498 P.2d 515 (1972), we adopted the following test of reasonableness:

"There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime." 17 Ariz.App. at 448.

We are of the opinion that no constitutional justification existed for ordering petitioner out of his car. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court stated that a "stop and frisk" is justified *only*:

" . . . [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom

he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety. . . ." 88 S.Ct. at 1884.

In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the United States Supreme Court recognized that reasonable cause for a stop and frisk need not be based on an officer's personal observation but may be based on an informant's tip. In *Adams*, at approximately 2:15 a. m. in a high-crime area, a person known to the officer approached his patrol car and informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. After calling for assistance on his car radio, the officer approached the vehicle to investigate the informant's report. He tapped on the car window and asked the occupant (Williams) to open the door. Williams rolled down the window instead, whereupon the officer reached into the car and removed a fully-loaded revolver from his waistband. The gun had not been visible to the officer from outside the car, but was in precisely the place indicated by the informant.

In order for a precautionary seizure and search to be legitimate, there must first exist on the part of the police a reasonable belief that criminal activity is afoot and that the seized person is armed and dangerous. Commonwealth v. Pollard, 450 Pa. 138, 299 A.2d 233 (1973). In other words, the police must prove that specific conduct of the seized person justified and made reasonable their belief that criminal activity was afoot and that the seized person was armed and dangerous.

The officer testified that petitioner had committed no suspicious or unlawful act prior to or at the time he was ordered out of the car. A pat-down search for weapons could not be justified unless the

police officer could point to specific facts or circumstances giving him reasonable grounds to believe petitioner might have been carrying weapons on his person. People v. Grace, 32 Cal.App.3d 447, 108 Cal.Rptr. 66 (1973). We do not believe that the information furnished to the officers concerning petitioner's prior convictions of carrying concealed weapons provided such reasonable grounds. Furthermore, the fact that narcotics transactions had been taking place at the park afforded no basis for converting petitioner's innocent activity, i. e., sitting in his vehicle in the middle of the afternoon, into suspicious conduct. United States v. Mallides, 473 F.2d 859 (9th Cir. 1973).

The facts adduced at the suppression hearing lead us to conclude that the officers had no reason to believe that criminal activity was afoot or that petitioner posed any danger to anyone's safety. Under these circumstances, no lawful justification existed for their actions. As stated in United States v. Johnson, 463 F.2d 70 (10th Cir. 1972):

"The issue is whether in the case at bar 'appropriate circumstances' justify the officer's action. Nothing connects the defendant with the defective car except that he was a passenger in it. The officer did not testify that at the time he requested him to get out of the car he had any suspicion that defendant had committed any crime. His 'curiosity' in that regard was aroused later. In any event curiosity does not equate with reasonable suspicion. The record discloses nothing to indicate that the officer, when he ordered defendant out of the car, had any reason to believe that there was any danger to anyone's safety. [Citation omitted]" 463 F.2d 72.

■ The initial detention of petitioner was unreasonable, hence unlawful. Since the evidence, to which the motion to suppress was directed, was procured by exploitation of that illegality rather than by means sufficiently distinguishable to purge it of the primary taint, it should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The lower court erred in denying petitioner's motion to suppress and is directed to enter an appropriate order not inconsistent herewith.

HOWARD, J., concurs.

Note: Pursuant to stipulation of counsel, this matter was heard and decided to two judges of this court.