**George COLEMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 8204.**

District of Columbia Court of Appeals.

Argued Oct. 17, 1974.

Decided May 14, 1975.

768

Alan B. Soschin, Washington, D. C., appointed by this court, for appellant.

Jeffrey T. Demerath, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, John W. Polk, and Richard W. Tynes, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This appeal follows appellant's conviction in a nonjury trial for carrying a pistol without a license,[1] failure to register a firearm,[2] and possession of unregistered ammunition.[3] Prior to the trial, appellant's motion to suppress evidence was denied by the court following an evidentiary hearing, and appellant assigns this ruling as his only ground for overturning the decision below. We agree that the court erred in refusing to suppress the evidence, and thus reverse the conviction.

The issue raised at the suppression hearing was the lawfulness of a prolonged police stop for investigation and a subsequent frisk which uncovered incriminating items resulting in appellant's arrest and his later trial and conviction. Our decision necessarily rests upon the facts leading up to the confrontation between the police and the appellant and what occurred during that encounter.

The facts, as presented by the government at the hearing on the motion to suppress, show that on November 13, 1973, at about 10 p. m., Police Officer Welch observed the appellant and a male companion knocking on the front door of a residence located at 248 Ninth Street, S.E. That section of the city is one in which older buildings were then being renovated into townhouses. As a result of this construction, the police had received numerous complaints of larceny and robberies in that particular area, of which Officer Welch was aware. Consequently when the two men "hurriedly walked from the front door" upon seeing the officer, he stopped them and inquired if "they had a residency there." Appellant and his companion replied that they did not, explaining that they were "looking for a friend." Two other police officers arrived on the scene at that juncture and Officer Welch "asked them to stay with Mr. Coleman and the other subject" while he went up to the house from which they had come.

The occupant of the house told the officer that the two men had knocked on the door, that he had inquired twice as to what they wanted, but had received no answer until he had moved to a window and, after repeating his question a third time, the subjects, upon observing the police officer, "mumbled" that they were looking for someone and then walked off the porch. When the officer returned to the sidewalk where the "suspects" were being detained he asked them for identification, which he was given. While one officer was checking the identification over the police cruiser's radio, another officer frisked the two men. This "pat down" produced a .38 caliber pistol and ammunition found on appellant resulting in his arrest and, in due course, the motion to suppress.

1. D.C.Code 1973, § 22–3204.
2. D.C.Pol.Reg. Art. 51, § 1.
3. D.C.Pol.Reg. Art. 53, § 2.

Resolution of the reasonableness of the stop and subsequent frisk requires us to examine the general principles set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In that case the Supreme Court observed that the Fourth Amendment is a fundamental right belonging as much to a citizen on the street as to a person within the privacy of his home. The Court noted that the Fourth Amendment governs "seizures" even though they fall short of a traditional arrest so that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" within the meaning of the Fourth Amendment. 392 U.S. at 16, 88 S.Ct. at 1877. The Court went on to suggest, however, that some stops for the purpose of investigation might be of a less objectionable nature than others. It said:

> We thus decide nothing today concerning the constitutional propriety of an investigative "seizure" upon less than probable cause for purposes of "detention" and/or interrogation. Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred. . . . [392 U.S. at 19 n. 16, 88 S.Ct. at 1879.]

To determine whether the seizure is reasonable or not, the Court said it must be judged against an objective standard, that is, whether the facts available to the police officer at the moment of seizure considered in the light of the governmental interest which allegedly supports an official intrusion warrant a man of reasonable caution to believe that the seizure was reasonable. The Court went on to point out that in justifying a particular seizure "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" such action. *Id.* 392 U.S. at 21; 88 S.Ct. at 1880.

The Supreme Court in discussing the right of the police to make an investigative stop in light of its opinion in *Terry,* said:

> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id., [Terry]* 392 U.S. at 21–22, 88 S.Ct. at 1879–1880 . . .. [Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).]

Justice White in his concurring opinion in *Terry* expressed the view that:

> There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. . . . In my view, it is temporary detention, warranted by the circumstances, which chiefly justifies the protective frisk for weapons. . . . [392 U.S. at 34, 88 S.Ct. at 1886.]

Both this court and the District of Columbia Circuit have, in various "appropriate circumstances" recognized that a policeman may stop a citizen for the purpose of investigating possible criminal behavior. Bates v. United States, D.C.App., 327 A.2d 542 (1974); Stephenson v. United States, D.C.App., 296 A.2d 606 (1972), cert. denied, 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed. 2d 197 (1973), and cases summarized in Appendix; Jenkins v. United States, D.C. App., 284 A.2d 460, 463 (1971); United States v. Lee, D.C.App., 271 A.2d 566 (1970); Von Sleichter v. United States, 153 U.S.App.D.C. 169, 172, 472 F.2d 1244, 1247, cert. denied, 409 U.S. 1063, 93 S.Ct. 555, 34 L.Ed.2d 517 (1972); Young v. United States, 140 U.S.App.D.C. 333, 336, 435 F.2d 405, 408 (1970).

Before the Supreme Court wrote its opinion in *Terry* the Ninth Circuit said in a case involving a stop of a suspicious automobile for routine investigation that there "is nothing ipso facto unconstitutional in the brief detention of citizens un-

der circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine investigations" and that

> due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. [Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966).]

■ Turning to the facts of this case, we would observe that the officer had ample reason in view of the foregoing authorities to stop the two suspects for the purpose of inquiring if they resided at that particular house. At that point he also could have requested identification, but chose not to do so until a few minutes later.

However, we cannot view the facts here as legally comparable to the usual stop and frisk or to the stop and frisk in *Terry*. Here we have a stop and brief questioning, followed by a three or four-minute hold for further inquiry and then a frisk while another officer checked the identification out over the cruiser's radio.

This raises the question of whether appellant's liberty of movement was so restrained when the arresting officer asked the other two officers to hold the appellant while he made further inquiry at the house as to constitute an illegal "seizure" within the meaning of the Fourth Amendment.[4] In other words, under the circumstances was it reasonable to momentarily hold this appellant and thereby maintain the status quo while further inquiry was made of the occupant of the house in question?[5]

The articulable "facts" which the government points to here to support its claim that the seizure was reasonable are (1) that the officers were well aware that a number of burglaries and robberies had occurred recently in the immediate area and (2) that the two men appeared suspicious when they "hurriedly walked from the front door" of the residence upon noticing Officer Welch arrive.

In a recent case involving a somewhat prolonged investigative stop, the Supreme Court of Connecticut held that a police officer stationed late at night in a motel parking lot was justified in ordering a fellow officer to stop four persons hurrying from the back of the motel to a waiting car. He had seen them enter the rear of the motel shortly before, but they had not gone to the restaurant area that was open to the public. The court held that their lack of cooperation and verbal abuse of the officers, the late hour and the commotion in the car justified the officers ordering the suspects out of the car and holding them while one of the officers went to the motel to check out a just received radio report of a disturbance at the motel. The court said:

> Albuquerque's order to hold the defendants while he checked out the disturbance at Carville's Motel was a reasonable preservation of the status quo dur-

4. The Uniform Arrest Act, adopted in 1942, authorized a peace officer to "stop any person [for not more than 2 hours] . . . whom he has reasonable grounds to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going." Warner, The Uniform Arrest Act, 28 Va.L.Rev. 315, 344 (1942). *See also* Cook, Constitutional Rights of the Accused: Pre-trial Rights 48 n. 8 (1972). Delaware and Rhode Island have adopted this provision [Del.Code Ann. tit. 11 § 1902 (1953) and R.I.Gen.Laws Ann. § 12–7–1 (1956)] with New Hampshire following suit but allowing detention for up to four hours [N.H.Rev.Stat.Ann. § 594.2 (1955)]. We do not have a similar provision in the District of Columbia.

5. *See generally* Cook, Constitutional Rights of the Accused: Pre-trial Rights, *supra* at 45ff.

ing further investigation, in view of the defendants' previous suspicious actions at the motel and their denial that they had been there. Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612. Neither the continued hold on the defendants nor the request that they go to the station constituted an arrest. While the officers did exercise control over the defendants, detaining them in the manner described was reasonable and within the scope of the right of the police to investigate in these circumstances. [State v. Watson, 14 Cr.L.Rptr. 2357 (Conn. Jan. 15, 1974).]

The court upheld the subsequent arrest after the officer, inquiring at the motel, learned that credit cards and a watch had been taken in the robbery there, items the officers had observed in the car when the subjects alighted in the motel parking lot.

But in another case where the officers, after giving the subject a citation for jaywalking, had obtained satisfactory identification and had no reasonable grounds to be suspicious, it was held not to have been reasonable for them to have detained him further while they checked his name against outstanding warrants. The court observed:

> Once the police officers required appellee to come to the police car, he was "seized," and therefore, the Fourth Amendment required that the length and scope of the detention be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible."
> . . . [United States v. Luckett, 484 F.2d 89, 90 (9th Cir. 1973).]

Testing all of the available information here objectively as *Terry* requires, we are of the opinion that these limited facts "taken together with rational inferences" did not provide reasonable grounds upon which to conclude that some particular criminal activity was afoot. Even assuming that

the officers acted reasonably in holding the suspects for three or four minutes while one of them made further inquiry with the occupant of the house in question, which we need not decide, we are left with a situation where the additional investigation failed to produce facts indicating that a crime had been committed which might have provided reasonable grounds for the frisk. The results of the inquiry may have further aroused the officer's suspicion but they failed to supply the sort of concrete facts necessary to warrant the continued detention and frisk of the suspects, particularly after they produced identification.

The Court in *Terry* observed in this regard that "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in the light of his experience." 392 U.S. at 27, 88 S.Ct. at 1883.

In Sibron v. New York, 392 U.S. 40, 73, 88 S.Ct. 1889, 1907, 20 L.Ed.2d 917 (1968), decided the same day as *Terry,* Justice Harlan, in his concurring opinion, said: "There must be something at least in the activities of the person being observed or in his surroundings that affirmatively suggests particular criminal activity, completed, current, or intended." *See also* to the same effect Reed v. Roylston, 22 Ariz.App. 118, 524 P.2d 513 (1974). The defendant here had not been under surveillance for any appreciable time before he was seized. He made no effort to hide, to run or avoid the police. Later he produced identification upon request. The facts observed by the police and inferences therefrom would reasonably prompt less suspicion than those observed by the officer in Sibron v. New York, *supra,* which the Supreme Court found were insufficient to justify a seizure and search of a person who had been observed over an eight-hour period talking to a number of known narcotic addicts.[6]

---

6. *See generally* LaFave, Street Encounters and the Constitution: Terry, Sibron, Peters, and Beyond, 67 Mich.L.Rev. 39. *See also*

United States v. Davis, 459 F.2d 458 (9th Cir. 1972); United States v. Hostetter, 295 F.Supp. 1312 (D.Del.1969).

■ Thus we must hold in the particular setting of this case that even assuming that the act of the two officers holding appellant while the first officer investigated further at the house in question was reasonable as a momentary maintenance of the status quo for the purpose of obtaining additional information, the continued detention when the further investigation failed to develop articulable facts that the suspects had committed or were about to commit a crime constituted an unreasonable and therefore an unwarranted seizure contrary to the Fourth Amendment. That is to say, after the inquiry at the house did not establish that a crime had been committed, and the subjects were able to identify themselves, reasonable grounds did not exist to hold them for further investigation.

This is not intended as a criticism of the police or as a suggestion that the circumstances did not justify an alert policeman in investigating the situation confronting him which he found to be suspicious. We agree the officer had ample reason to check into the matter. We are simply saying that in view of Supreme Court decisions interpreting the Fourth Amendment the facts available to the officers were not sufficient to support a continued detention of the subjects.

■■ Any subsequent search of the defendant cannot be viewed as reasonable and therefore cannot be sustained. United States v. Davis, 459 F.2d 458 (9th Cir. 1972). Although Terry v. Ohio, *supra* 392 U.S. at 27, 88 S.Ct. 1868, held that a police officer, under appropriate circumstances, may make a reasonable, limited search for weapons in the interest of his own protection, the rule cannot be invoked where reasonable grounds no longer exist for detaining the suspect. Consequently, the evidence, which was taken from the defendant in violation of the Fourth Amendment rights, cannot be used against him in view of the exclusionary rule. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29

L.Ed.2d 564 (1971); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

Accordingly, the pistol and ammunition discovered as the result of the illegal frisk should have been suppressed.

Reversed.

GALLAGHER, J., concurs in the result.