537 P.2d 615

**The STATE of Arizona, Appellant,**

**v.**

**Roosevelt THOMAS and John Wayne Head, Appellees.**

**No. 2 CA–CR 539.**

Court of Appeals of Arizona,
Division 2.

July 15, 1975.

Rehearing Denied Aug. 20, 1975.

Review Granted Oct. 9, 1975.

Bruce E. Babbitt, Atty. Gen., Phoenix, Dennis DeConcini, Pima County Atty., by Jim D. Himelic, Deputy County Atty., Tucson, for appellant.

Donau, Bolt, Hickle & Whitley by John R. Bolt, Tucson, for appellee Thomas.

John M. Neis, Pima County Public Defender, by Anne-Marie Brady, Asst. Public Defender, Tucson, for appellee Head.

OPINION

KRUCKER, Judge.

Defendants were indicted on charges of burglary and grand theft. In the trial court they filed motions to suppress certain physical evidence and written confessions. After a plenary hearing the trial court granted defendants' motions. The State has appealed to this court pursuant to A. R.S. § 13–1712(7) (Supp.1973).[1] We affirm the order of the trial court.

After sunset on August 14, 1974, Officer Dainty of the Tucson Police Department

---

1. For a recent case decided by the Supreme Court of Arizona under A.R.S. § 13–1712(7) (Supp.1973), see State v. Fellows, 109 Ariz. 454, 511 P.2d 636 (1973).

was patrolling the area around Linden Park in Tucson. While there, he noticed a car at the other end of the park, approximately 100 yards away. His testimony at trial indicates that his eye was caught by someone in the front seat holding up a red object. He further testified that he could not tell whether the object was a can or a glass and that it could have been just about anything with a red tinge to it. Thinking that what he had seen might have been a Budweiser beer can, Dainty drove over to the car. Sitting in the car were defendants, both black males, with two young, white females. Officer Dainty had not seen defendants before. He walked to the car and asked defendants to get out. After they had done so, Dainty requested identification for a records check. They produced their driver's licenses, indicating assent to the records check and stating they had nothing outstanding. Dainty conducted a records check over his radio which disclosed outstanding robbery warrants in defendants' names. Officer Dainty then arrested defendants on those warrants and placed them in the back of his patrol car. A subsequent inventory of defendants' car revealed items that later proved to have been taken in a burglary. Defendants later confessed to the burglary in writing.

At the trial defendants filed motions to suppress the written confessions and the physical evidence taken from their car. The trial court found that it was unreasonable for Officer Dainty to conclude that someone was drinking beer in the car. He held accordingly that defendants had been detained in violation of their Fourth Amendment rights and ordered the physical evidence and confessions suppressed as "fruit of the poisonous tree."

■ The State first argues that defendants were not "detained" under the facts of this case. It notes that Officer Dainty merely "asked" them to get out of their car and produce identification and argues that their compliance was voluntary. We disagree. First, the fact that defendants were asked to get out of their car at all is inconsistent with the State's contention that they were not detained. Second, Officer Dainty testified that if defendant Thomas had left before the records check came back, he would have stopped him. In State v. Mayes, 21 Ariz.App. 87, 515 P.2d 1185 (1973), vacated on other grounds, 110 Ariz. 318, 518 P.2d 568 (1974), a police officer testified that the defendant was not free to walk away at the time the officers requested his identification. From that testimony we concluded that defendant had been "seized." 21 Ariz.App. at 88, 515 P. 2d 1185. We hold accordingly that defendants were detained by Officer Dainty.

We have examined the authorities cited by the State on the issue of detention vel non. We find them all either unpersuasive or distinguishable.

The State's second contention is that even if Officer Dainty detained defendants, the detention was reasonable. In State v. Baltier, 17 Ariz.App. 441, 498 P.2d 515 (1972), we held that for a forced investigative stop to be justified:

"There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime." 17 Ariz.App. at 448, 498 P.2d at 522.

■ In the instant case, Officer Dainty saw someone lifting a red object in defendants' car after sunset at a distance of 100 yards. His testimony indicates that he could not tell if the red object was a can or a glass or perhaps something else. During his approach to the car, he did not see the red object again. As he got closer, he saw that defendants were black and that the two young girls accompanying them were white. Officer Dainty testified that defendants were doing nothing suspicious. Although he testified that there is a high incidence of burglary and drug-related offenses in the Linden Park area, he also

testified that to his knowledge neither of the defendants had recently engaged in criminal activity. There is no evidence in the record that it is unusual for blacks to be in Linden Park. Moreover, Officer Dainty's testimony indicates that he detained defendants in part because "[t]here are a whole lot of people with outstanding warrants."

We conclude from the record that nothing Officer Dainty knew or saw when he decided to approach defendants could have given him a rational suspicion that defendants were engaged in some unusual activity related to crime. Our decision in Reed v. Roylston, 22 Ariz.App. 118, 524 P.2d 513 (1974), is in point. In *Reed* a TAC officer told police officers that petitioner was sitting in his car by a park and had been known to carry concealed weapons in the past. The officers drove to petitioner's car and asked him for identification. He gave it and the officers asked him to get out of his car. When he did so the officers noticed a bulge in his pocket. After some discussion and a struggle, the officers discovered that the bulge was heroin. On petition for special action we held that the detention and search were unreasonable because the officers had no reason to believe that criminal activity was afoot or that petitioner was armed. In the case at bench, Officer Dainty had even less cause than the officers in *Reed* to believe that defendants were engaged in criminal activity. *See also*, State v. Weitman, 22 Ariz.App. 162, 525 P.2d 293 (1974). We therefore hold that the detention of defendants was unreasonable under *Reed* and *Baltier* and that the trial court properly suppressed the written confessions and physical evidence under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The State contends that the trial court erroneously applied the *Baltier* test because in this case the "stop" was not followed by a "frisk". We reject this contention. An investigative stop is a distinct transaction and its validity is determined independent of what follows it. We recognized this in State v. Mayes, supra, where we invalidated under *Baltier* an investigative stop that was not followed by a frisk.

Affirmed.

HOWARD, C. J., concurs.

HATHAWAY, Judge (dissenting).

I am unable to agree with the majority's finding that the appellees had been seized prior to their arrest. The police officer was on his regular beat in Linden Park, a known high-crime area. He was apparently quite well acquainted with regulars in the park and had adopted a policy of focusing particular attention on strangers. He came upon the appellees, strangers to him, sitting in a car with two young girls.

I cannot agree that the request for identification, voluntarily furnished by appellees resulting in the disclosure that they were wanted on robbery warrants, taints their arrest under the presumably valid warrants. Learning that appellees were wanted on outstanding robbery warrants, the officer was duty-bound to arrest and take them into custody. Their seizure under the warrants would appear to be under due-process.

Does the majority's conclusion, that the arrests were tainted by the policeman's inquiry, require that appellees—arrested on outstanding warrants for a violent crime, robbery—be released and the police close their eyes and count to 100 while appellees run and hide before the police again resume looking for them?

It is my belief that the arrests of appellees followed a reasonable inquiry which disclosed their fugitive status. The subsequently discovered items in the car were legally obtained as a search incident to a valid arrest or through an inventory while impounding the automobile. I would reverse the granting of the suppression motion.