562 P.2d 1075

**The STATE of Arizona, Appellee,**

v.

**William W. CASTILLO, Appellant.**

**No. 2 CA–CR 861.**

Court of Appeals of Arizona,
Division 2.

Jan. 4, 1977.

Rehearing Denied Feb. 8, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Anderson, Welker & Williams by Dudley S. Welker, Safford, for appellant.

## OPINION

RICHMOND, Judge.

Appellant was convicted of unlawful possession of marijuana and sentenced to a term of not less than five nor more than six years in the Arizona State Prison. His only contention on appeal is that his motion to suppress marijuana seized from his person was erroneously denied. Basically his argument is that the search of his person was unreasonable, hence violative of the constitutional prohibition against unreasonable search and seizure.

Briefly, the facts are as follows. On August 17, 1975, at approximately 7:00 p. m., a Pima, Arizona, police officer observed a slow-moving van driving east on U.S. 70. According to the officer, this vehicle was moving "in a drifting manner" and crossed the center line approximately twice. After the officer signaled the vehicle to pull over, the van "again drifted to the left side and then crossed the center line again and then went back over to the far right-hand side of the road." Appellant, the driver, was asked for his license and, after some fumbling around, produced it. He told the officer that he was sleepy and had just been released from jail on "a framed-up charge." When the officer told him that the reason for his being stopped was that he had been weaving across the center line, appellant stated that he knew he was weaving and that he was tired.

The officer testified that appellant's clothes were messy and disarranged, that he seemed confused, and that the officer did not detect any odor of alcohol. He then required appellant to perform certain standard field coordination exercises and found that appellant's coordination was very poor. Because he felt that appellant's ability to drive safely was impaired, he proceeded to summon a Department of Public Safety unit. The officer asked appellant if he could search the van and appellant consented but the officer found nothing in the van. About 10 or 15 minutes later, a DPS officer arrived and was told by the first officer what had transpired.

The DPS officer testified that when he arrived, appellant appeared to be extremely fatigued and sleepy, his actions were deliberate and very slow, and his eyes were

bloodshot and watery. The DPS officer also required appellant to perform certain coordination tests and did not detect any odor of alcohol. He then placed him under arrest for driving while under the influence of drugs. After appellant was placed under arrest, the DPS officer asked him to step over to the rear of the patrol vehicle and place his hands on the side of the vehicle. At that time the officer conducted a search during which he unbuckled appellant's trousers and dropped them down. He testified that shortly after he had arrived and was conversing with the first officer, he observed appellant out of the corner of his eye stick his hand down in the front of his pants and "when I looked directly at him he had his hand down to about the wrist directly in front of his pants and as I continued to look at him he started to tuck his shirt in and continued until he had his shirt tucked in." The officer also testified that during his experience as a peace officer, he had found narcotics concealed on individuals in a wallet, in small containers, inside of a headband and also inside underwear. He stated that his purpose in searching appellant was to determine if he had any weapons or any evidence connected with the charge of driving while under the influence.

We agree with the state that the cases of *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), are controlling here. In *United States v. Robinson*, supra, the court stated:

> "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 94 S.Ct. at 477.

Appellant's reliance on our decision in *Reed v. Roylston*, 22 Ariz.App. 118, 524 P.2d 513 (1974), is misplaced. *Reed* was an investigatory stop situation and the limitations placed on protective searches conducted in an investigatory stop situation based on less than probable cause are not carried over to searches made incident to lawful custodial arrests. See *State v. Kennel*, 26 Ariz.App. 147, 546 P.2d 1156 (1976). We hold, therefore, that upon arresting appellant for the offense of driving while under the influence of drugs and taking him into custody, the DPS officer was entitled to make a full search of appellant's person incident to that lawful arrest. As pointed out in *Robinson*, supra:

> "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial. [Citations omitted]" 94 S.Ct. at 476.

We do not find, as appellant would have us do, that under the circumstances presented here the search of his person partook of the extreme or patently abusive characteristics which were held to violate the Due Process Clause of the Fourteenth Amendment in *Rochin v. People of California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.