402 P.2d 557

**STATE of Arizona, Appellee,**

**v.**

**Azie Vearnell PEARSON, Appellant.**

No. 1505.

Supreme Court of Arizona.

En Banc.

June 3, 1965.

Rehearing Denied July 6, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Norman E. Green, County Atty. of Pima County, Carl Waag, Deputy County Atty. of Pima County, for appellee.

Benjamin Lazarow, Tucson, for appellant.

STRUCKMEYER, Vice Chief Justice.

Azie Vearnell Pearson was informed against, tried and convicted for the unlawful sale of a narcotic drug (heroin), a felony in violation of A.R.S. § 36–1002.02, as amended. From the conviction and sentence he appeals.

Pearson first urges that the State failed to introduce sufficient evidence to sustain the burden of proof as to whether he sold narcotics. In reviewing the evidence, this Court will view it in the light most favorable to the State and resolve all reasonable inferences against the defendant, State v. Corrales, 95 Ariz. 401, 391 P.2d 563; State v. George, 95 Ariz. 366, 390 P.2d 899. The evidence when so viewed establishes that on November 11, 1963, one Henry Lugo, Jr., purchased from the defendant for five dollars what is referred to in the testimony as a "paper" of heroin. At the time of purchase, two Arizona State narcotic officers were parked some 450 feet down the street for the purpose of observing the transaction through high-powered binoculars.

Lugo was the State's principal witness. He testified that he drove to the defendant's house and:

"I asked him if he had any stuff and he said, yes, that he did. He asked me how much I wanted. I told him I wanted one paper.

\* \* \* \* \* \*

"I handed him—no, he went into the house, if I remember correctly, and he came out in about a minute and handed me a paper. I gave him a $5.00 bill."

Lugo testified that afterwards he gave the "paper" to one of the officers.

The officers testified that prior to the transaction Lugo was stripped so that his clothes and body could be examined to enable them to be certain that he was not at-

tempting to frame the defendant. The officers also searched Lugo's car to make certain that he did not have any narcotics in it. It may be noted, however, that the evidence as to the search of the car does not foreclose the possibility that an object as small as a paper of heroin might have been overlooked.

The reason for the officers' precaution is explained by these facts: At the time of this incident, Lugo had been convicted of theft and had been a narcotics user for some two or three years. There was testimony from Lugo that he was being paid a fifty dollar bonus for every case he helped make and two attorneys testified for the defense that he told them he had previously framed one Harry Ludlow on a similar charge.

 Notwithstanding the obvious weakness in the State's case the jury, if believing the two officers and their testimony that Lugo was within their sight at all times from the moment he was stripped and searched until he returned to the State Building at Tucson after the sale, even though they could not see the actual exchange of cash for the paper of heroin, could find that the sale took place. The evidence directed toward the impeachment of Lugo's character affects only his credibility as a witness and not the admissibility of his testimony. If the evidence was sufficient to warrant submission to the jury, it is not for judges to weigh the evidence or to determine the credibility of witnesses, United States v. Kahaner, 2 Cir., 317 F.2d 459.

 The defendant assigns as error that the trial court failed to comply with the jury's request for a rereading of the court's instruction on reasonable doubt and that in denying the jury's request on the rereading of the instruction the trial court employed language which had the effect of commenting on the evidence to the prejudice of the defendant. These issues were raised in the trial court by the filing by defendant's counsel of an affidavit stating what he had been told by the foreman of the jury.[1] The errors sought to be attributed to the trial judge find support only in the hearsay utterances set forth in the affidavit; that is, the foreman stated to

---

1. Defendant's counsel was told that the jury wished that the instructions on reasonable doubt be reread to them and the foreman so advised the bailiff but the bailiff returned and informed the jury that this would necessitate convening the court and bringing in the court personnel, that the trial judge thought that the instructions were plain enough, that the foreman further stated the bailiff informed the jury shortly before midnight that unless a "verdict was reached or something happened" the jury would be locked up for the night and that within minutes thereafter the jury returned a verdict of guilty, and that the foreman of the jury was asked to sign an affidavit concerning the matter but that he did not wish to sign.

the defense counsel and defense counsel purportedly repeated those statements. For this reason, we do not reach the matters set forth in counsel's affidavit, being of the view that they are not properly raised in this Court.

While, as a general rule, a juror's evidence will not be received to impeach a verdict, VIII Wigmore on Evidence, Rev. Ed.1961, § 2345, p. 677, this does not preclude his testimony as to misconduct of a party or a court officer, Wheaton v. United States, 8 Cir., 133 F.2d 522; Wilkins v. Abbey, 168 Misc. 416, 5 N.Y.S.2d 826; Carpenter v. Carpenter, 48 R.I. 56, 135 A. 325. Thus, testimony or affidavits of jurors impeaching their verdict will not be received where the facts sought to be shown are such as inhere in the verdict; but where the purpose is to show improper acts or communications of persons other than jurors, they may be established by direct testimony or affidavit of a juror. See annotations 146 A.L.R. 514 and 90 A.L.R. 249, "Admissibility of testimony or affidavits of members of jury to show communications or other improper acts of third person."

Where misconduct of court officers is sought to be established by jurors, it must be evidenced by the jurors' statements under oath either by affidavit or by their direct testimony and not by the hearsay statements of others as to what a juror may have said. In Maryland Casualty Co. v. Seattle Electric Co., 75 Wash. 430, 134 P. 1097, the Washington court said:

"Whatever the breadth of the application of the rule as to the inadmissibility of the affidavits of jurors to establish their misconduct, it is almost universally held that affidavits of third persons as to unsworn statements of jurors tending to show either the fact of misconduct or its effect upon the verdict cannot be received for any purpose because they are of a purely hearsay character. '* * * Statements made by jurors not under oath, after the trial is over, are not competent evidence.' [citing cases]" Id. at 1099–1100.

In the subsequent criminal case of State v. Dalton, 158 Wash. 144, 290 P. 989, the court said:

"The misconduct of the jury is sought to be shown by the affidavit of the attorney for the appellant, which sets forth statements which two of the jurors had made to him relative to matters that occurred in the jury room. There is no affidavit of any juror. Misconduct of the jury, if there be misconduct, based upon what occurred in the jury room, cannot be shown by the affidavit of a third person based upon hearsay. In Lindsey v. Elkins [154 Wash. 588] 283 P. 447, 456, it is said:

" 'Unless the appellant's motion for a new trial on the ground of misconduct of the jury was supported by affidavits, the motion should have been denied. The unsworn statements of the two jurors are not sufficient to support the motion. Supporting affidavits being necessary, *do the affidavits of the attorneys reciting what they were told by a number of the jurors satisfy the rule? Manifestly not.* The affidavits are nothing more than hearsay statements, and such affidavits are not sufficient to invoke the discretion of the trial court to grant a new trial.' " Id. at p. 990. (Emphasis supplied.)

▉ In the present case, counsel asserts in his affidavit that he asked the foreman of the jury to sign an affidavit concerning the matters set forth but that the foreman did not wish to do so. The proper procedure in these circumstances is to request permission from the trial court to examine under oath the juror or other persons purportedly knowing the facts. But assignments of error based on the conduct or remarks of a trial judge will not be reviewed on appeal where they are not properly supported by the record. Cook v. Knox, Okl., 273 P.2d 865. Any other rule might require that an appellate court set aside a jury's verdict and the judgment based on it without establishing for certain whether the incident did or did not occur, or, if an incident did occur, whether the judge's directions to his bailiff were misinterpreted in the course of being reported back to defense counsel.

▉ In his final assignment of error, defendant contends the trial court failed to instruct the jury specifically that it must find the defendant knew he was selling narcotics. This is predicated upon the assertion that the State failed to prove the defendant knew the identity of the substance that was the object of the sale. We note the trial court did instruct the jury that in every crime or public offense there must exist a union or joint operation of act and intent. We find no merit in this argument.

Judgment affirmed.

LOCKWOOD, BERNSTEIN, UDALL, and McFARLAND, JJ., concurring.