464 P.2d 953

**STATE of Arizona, Appellee,**

v.

**Matias Moreno TORRES, Appellant.**

**No. 1978.**

Supreme Court of Arizona,
In Division.

Feb. 13, 1970.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, Vernon B. Croaff, Former Public Defender, Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

LOCKWOOD, Chief Justice.

Matias Torres, the defendant, was charged with first degree rape. He waived a jury, was found guilty, received a sentence of 12–14 years in prison, and has appealed. The principal issue raised is whether the state proved penetration beyond a reasonable doubt.

This problem arose almost immediately, when the county attorney, in his opening argument, stated that the victim of the crime would testify that the defendant:

"* * * took out this thing between his legs and placed it between her legs and rubbed it up and down and across what we know as the vaginal area and what the young lady will describe as her pee pee, and that after doing this for some minutes, this young lady got wet all over between her legs. * * * The state will have some problem as to the penetration action of the act."

Defense counsel, at the close of the state's opening statement moved for a directed verdict on the ground that the state had admitted that penetration would not be proved. The motion was overruled.

Defendant lived with Phyllis Valenzuela (also known as Phyllis Florez) in her Phoenix home "off and on since 1963" without benefit of clergy. She had three children: Christina Florez, age 10 at the time of the trial in August, 1968; Manuel, age 9, and David who was 4 years old. Defendant was the father of David.

On May 24, 1967, when the crime was alleged to have been committed, Phyllis had to leave the house to pick up groceries at the welfare center. She was gone from about 2:00 P.M. to 3:30 P.M. Since defendant was at her house, she asked him to watch out for David and for her other two children who would soon be home from school. When she returned she found de-

fendant in the kitchen washing dishes. This made her suspicious because defendant rarely made any attempt to be helpful. She found Christina (at that time, age 9) looking "kind of sad" but this did not disturb or concern her, though she inquired why the child was not outside playing.

A few days later Christina developed a vaginal discharge, followed by sores, and her mother took her to the doctor. He testified that he saw the child on June 2, 1967, took a smear of the discharge, and sent it to the laboratory. Over defense counsel's objection he was permitted to testify that the lab report showed that the child had gonorrhea. This disease, he stated, could be contracted only by direct contact, but such contact could have been by the semen ejaculated by a man while rubbing his penis across the vaginal area of the child, if that male were infected with the disease at the time. On cross-examination he testified that he did not see any recent lacerations or bruises around the vaginal area; that he did not wish to imply that the child had been subjected to an act of sexual intercourse; and that he did not give her the type of examination that he would give a patient who came in to be examined because of rape.

Since the state, in its appellate brief, admits that the laboratory report was hearsay and that its admission into evidence was error, and since no attempt was made to prove that defendant had gonorrhea, no inference of penetration can be drawn from the medical testimony. Since Phyllis was not present and was not permitted to testify what she was told by Christina, her testimony is useless on the question of whether penetration was achieved.

It is, therefore, obvious that if penetration were proved it must have been by the child's testimony, as there were only three witnesses.

At the trial this child, though ten years old and a good student in school, was nervous, and apparently had some difficulty in understanding the nature of some of the questions asked. It is obvious that some language barrier existed, since she was of Spanish or Mexican descent. The judge obviously recognized this and conducted a thorough examination including permitting questions by counsel for the state and for the defense. Although the child's answers appeared somewhat confused, and contradictory to some of the questions, she appeared to grasp the significance of telling the truth. Though the confusion of the witness may affect the weight of her testimony, we think that the trial court did not abuse his discretion in determining that she was competent to testify, and in giving her testimony the weight he deemed it deserved. State v. Berry, 101 Ariz. 310, 419 P.2d 337.

Her testimony clearly established that while her mother was away, defendant got her to lie down on the bed, pulled down her underpants and pulled down his trousers and underpants. "Then", she testified, "I saw something hanging. Then he raped me." That sentence was so different from her testimony, in style, vocabulary, and positiveness, that even the county attorney was surprised. Instead of accepting the statement he said: "Okay, hold up." and went on with his questioning, bringing out that what she saw hanging was the same as her baby brother had, only longer; that he held "his thing" in his hand and kept moving it around; that he put it "down here where we use the bathroom"; that he touched her in her "wee wee with that thing hanging"; that she got all "wet" from Matias' "long thing"—from something that came out of it; and that he told her to clean up and not mention the incident to her mother.

On cross-examination she testified that what was done to her did not hurt. This, taken with the failure of the mother to be concerned when she first arrived home, the lack of testimony that there was any bleeding, and the doctor's testimony that there were no lacerations or bruises and that he did not examine her as

he would have examined one suspected of having been raped, plus the obvious fact that penetration of a nine year old child could hardly be accomplished without one or more of those external signs, made it improper for the judge to find that penetration was proved beyond a reasonable doubt. It is true that only "the slightest penetration of the vulva" need be shown. State v. Scott, 105 Ariz. 109, 460 P.2d 3. However, there can be no conviction of rape without proof beyond a reasonable doubt that there was at least some penetration. A.R.S. § 13–612.

There is, however, some additional testimony in the record by reason of the admission into evidence of the transcript of the preliminary hearing. Its admission was based upon a mistaken understanding by defense counsel of a stipulation that it might be admitted. He later tried to correct the error and the court denied the relief requested. However, the testimony in the transcript adds. nothing to the evidence adduced at the trial.

The following quotation from the state's brief on appeal, throws light upon how weak the state's attorney believes the state's case is:

"[Defendant's] conviction is supported only by the * * * testimony given by the victim tending to show, but not conclusively proving, the fact of penetration. If this Court deems that evidence insufficient to convince any reasonable person of appellant's guilt, a reversal would be in order."

We hold that there was no proof of even the slightest penetration. Certainly defendant's alleged conduct was despicable. It may be that he could be found guilty of some other criminal offense. However, he cannot be punished for a crime whose essential elements were not sufficiently proved.

Reversed and remanded.

McFARLAND and HAYS, JJ., concur.