514 P.2d 1032

**The STATE of Arizona, Appellee,**

v.

**Abraham Lincoln KING, Appellant.**

**No. 2448.**

Supreme Court of Arizona,
In Division.

Oct. 9, 1973.

Rehearing Denied Nov. 6, 1973.

**38**

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant, Abraham Lincoln King, from jury verdicts and judgments of guilt to the crimes of second degree rape, § 13–611, subsec. B A. R.S., and lewd and lascivious acts, § 13–652 A.R.S. Imposition of sentence was suspended for a period of five years.

We are asked to consider the following questions on appeal:

1. Did the court err in allowing impeachment of the defendant by an 11 year old prior conviction for burglary?

2. Does the rule which allows impeachment of a defendant by prior felony convictions deny due process by placing an unreasonable burden on a defendant's right to testify?

3. Did the failure of the trial court to instruct the jury that penetration is an essential element of the crime of rape constitute reversible error?

4. Were certain comments made by the county attorney during closing argument so prejudicial as to have denied the defendant a fair trial?

The facts necessary for a determination of the issues raised on this appeal are as follows. On 18 May 1971, Wanda and Mary, aged 16 and 15 respectively, complained to the police that their stepfather, Abraham Lincoln King, had forcibly raped both of them and that he was also guilty of lewd and lascivious acts. Those original charges were eventually dismissed, and King was finally charged with two counts of second degree rape as to Wanda and Mary and one count of lewd and lascivious acts with the prosecutrix Wanda.

It is unnecessary to set forth in detail the testimony of Wanda and Mary concerning the nature of the acts to which they were subjected. It is sufficient to state that both girls described specific occasions on which they had submitted to sexual intercourse with their stepfather, and both testified that they had regularly had intercourse with the defendant over a period of about two years. In addition, Wanda testified that King had performed cunnilingus with her and that she had been forced to perform acts of fellatio with him. The testimony of both girls with respect to acts of intercourse was corroborated by the girls' mother and their brother.

Defendant, who testified on his own behalf, denied the accusations of his stepdaughters and sought to establish motives

for their alleged perjury. On cross-examination, the defendant admitted a prior 11 year old conviction for burglary.

## IMPEACHMENT BY PRIOR CONVICTION

Defendant argues that an eleven year old conviction for burglary is too remote to have any probative value for impeachment purposes, and that it was error for the court to have allowed the county attorney to cross-examine him as to this prior conviction.

A witness's credibility may be impeached by a prior felony conviction. State v. Owen, 101 Ariz. 156, 416 P.2d 589 (1966); State v. Harris, 73 Ariz. 138, 238 P.2d 957 (1951). The prior conviction cannot, however, be so remote as to have reasonably lost all relevancy with respect to the purpose for which it is introduced. State v. Harvill, 89 Ariz. 340, 362 P.2d 633 (1961). Thus, for example, this court has held that a thirty year old conviction is not a valid impeachment device, Sibley v. Jeffreys, 76 Ariz. 340, 264 P.2d 831 (1953), and that, likewise, a nineteen year old conviction for manslaughter does not reasonably reflect upon one's credibility. State v. Ross, 107 Ariz. 240, 485 P.2d 810 (1971). There is, however, no mechanical formula for determining remoteness. Admissibility of a prior conviction for impeachment purposes is generally left to the sound discretion of the trial court. State v. Phillips, 102 Ariz. 377, 430 P.2d 139 (1967). In determining whether a prior conviction is too remote to be probative of a witness's veracity the court should take into account such factors as the length of time which has elapsed, the length of the former imprisonment, subsequent conduct and present age of the witness, intervening circumstances and the nature of the prior offense. State v. Ross, supra; Sibley v. Jeffreys, supra.

In the case before us eleven years had elapsed since the defendant's burglary conviction. The record does not reveal the length of imprisonment served for that particular offense, but it does appear that the burglary conviction was not defendant's only prior felony, and that he had, in fact, spent at least 15 of his 44 years in jail. On the other hand, at the time these most recent charges were brought against him, defendant had maintained a steady job and had stayed out of trouble for a period of seven years. If subsequent good conduct were the only factor to be considered in determining the value of a prior conviction as an impeachment device, we would agree with the defendant. In light of all the other factors, however, we are not prepared to say that the trial court abused its discretion in allowing the impeachment.

## IS IMPEACHMENT BY PRIOR CONVICTIONS UNCONSTITUTIONAL?

Although he was not himself dissuaded from testifying on his own behalf, defendant nevertheless urges that the rule which allows impeachment by prior convictions denies due process in that it places an undue burden on a defendant's right to testify.

A defendant in a criminal case has the right to testify on his own behalf, or not, whichever strategy he considers would be most beneficial to his case. However, the right of a criminal defendant to take the stand and speak on his own behalf does not include the unqualified right to have brought out on cross-examination only those facts which are favorable to his case. We reaffirm our previous position that the rule which allows impeachment by prior felony convictions is not constitutionally defective. State v. Reeden, 106 Ariz. 409, 477 P.2d 240 (1970); State v. Fields, 104 Ariz. 486, 455 P.2d 964 (1969).

## FAILURE TO INSTRUCT AS TO PENETRATION

This court has many times held that it is reversible error for the trial

court to fail to instruct the jury as to an essential element of the crime with which the defendant is charged unless that element is covered completely by other instructions. State v. Brock, 101 Ariz. 168, 416 P.2d 601 (1966); State v. Elias, 74 Ariz. 374, 249 P.2d 941 (1952); State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947). Although the essence of the crime of rape is the outrage to the person and feelings of the victim, § 13–612 A.R.S., there can nevertheless be no rape without some penetration, however slight. State v. Torres, 105 Ariz. 361, 464 P.2d 953 (1970).

The court properly instructed the jury as to the statutory definition of the crime of second degree rape but was not requested and did not give an instruction on penetration. We note at the outset that the record amply supports the fact of penetration. The victim Wanda testified as follows:

"Q  What is the first thing you remember happening that night?

"A  Well, he was just playing with my breasts.

    \*      \*      \*      \*      \*      \*

"Q  What did he do after that?

"A  Then he started kissing down there.

"Q  Down between your legs?

"A  Yes.

"Q  Do you know what a vagina is?

"A  Yes.

"Q  Is that where he kissed you?

    \*      \*      \*      \*      \*      \*

"A  Yes.

    \*      \*      \*      \*      \*      \*

"Q  What did he do next?

"A  And then he put in his penis.

"Q  And he put that into your vagina?

"A  Yes."

The victim Mary testified similarly:

"Q  And what did he do? What is the first thing he did?

"A  Started kissing me.

"Q  Where did he kiss you?

"A  On the mouth.

"Q  What else did he do?

"A  And he played with—he sucked my breasts and played with my privates.

"Q  Between your legs?

"A  Right.

"Q  What did you do next?

"A  Nothing. He just told me—then he started having sexual intercourse.

"Q  Do you know what a vagina is?

"A  Yes.

"Q  And you know what a penis is?

"A  Yes.

"Q  Did he stick his penis in your vagina?

"A.  Yes."

No request for an instruction having been made by the defendant, we will not reverse unless the failure to give the instruction was, under the facts in the instant case, fundamental error. Where the fact of penetration is in doubt, it may be reversible error for the court to omit instructions as to the necessity of penetration. But where, as here, the testimony of the victims establishes penetration beyond a reasonable doubt, we will not consider the failure to give an instruction on penetration fundamental error. We have stated:

"\* \* \*  Errors or omissions in the giving of instructions which were not raised at trial will not be considered unless the error is so fundamental that it is manifest the defendant did not receive a fair trial. \* \* \*" State v. Coward, 108 Ariz. 270, 271, 496 P.2d 131, 132 (1972).

## IMPROPER COMMENT BY THE COUNTY ATTORNEY

Defendant's last claim is that comments made by the county attorney during closing argument went beyond the realm of permissible agrument and that their cumulative effect was to tilt the scale in a closely

balanced case in favor of the prosecution. The following are excerpts which defendant cites as examples of improper expressions of the county attorney's personal belief in the defendant's guilt, affirmations of the veracity of the State's witnesses, misstatements of fact, or insults to opposing counsel:

"MR. ZETTLER: * * * In making my closing argument, I would like to more or less take things in the order in the way they came. Then I will run over them step by step and tell you why I personally think—

"MR. DOUGLASS: Your Honor, we will object to the county attorney's personal opinion.

"THE COURT: Sustained.

"MR. ZETTLER: All right.

* * * * * *

And I don't think Mary ——— was up there lying to you. I don't think she ever lied to you.

"MR. DOUGLASS: Your Honor, again, I will object to counsel presenting his personal opinion.

"THE COURT: Sustained.
Please refrain from doing so.

"MR. ZETTLER: The State believes she was telling the truth.

"MR. DOUGLASS: Your Honor, once again I will object. The jurors are to determine who was telling the truth, not myself or Mr. Zettler.

"THE COURT: Just base your argument on the record, if you would, Mr. Zettler.

* * * * * *

"MR. ZETTLER: Now, the thing that the defendant tried to bring out in this case is that, well, these girls have a motive to come in here and to lie to you and that you shouldn't believe them because they have a motive. They don't like their step-father. Well, I don't really blame them.
* * *

* * * * * *

"MR. ZETTLER: It was also brought out, as to Wanda Jo, that Wanda Jo has had sexual intercourse with her boyfriend. * * * But really I don't know how we can worry about her having intercourse with her boyfriend when we consider especially the type of atmosphere, the type of environment she was brought up in.

* * * * * *

"Now, what about defendant's story?

* * * What would be his motive for lying? What about his motive? Did you expect him to come in here and tell you, 'Yes, I did these things'? You know what his motive is as well as I.

* * * * * *

"Maybe there was a lingering hate. I say there possibly was. I don't think I would think much of my step-father either for some of the things that went on there. Mr. Douglass then starts talking about inconsistencies in the testimony, and first of all we have hundreds of pages of transcript where these girls were on the witness stand, where everything they said was written down, and we also have statements that they made at the police station where it was recorded, and he was given copies of this, and he had weeks and weeks to look this over, and then look at the girls.

* * * * * *

"He goes on to say, well, how come she never told the police back when she first went to them that she had sucked his penis? But at the preliminary hearing she testified to it and at the trial she testified to it. I could see why she probably didn't want to tell them, but when she was asked about it, when she was asked by Mr. Douglass she didn't hesitate to—she said, yes, I had done that, had done it on quite a few occasions.

"MR. DOUGLASS: Excuse me. That's a misstatement of fact. She said, 'No, I don't remember it.'

"MR. ZETTLER: I am going to object to him objecting. The jury will hear the instructions and they will judge the evidence from the way they hear it.

"THE COURT: Well, the jurors will judge the evidence and determine the evidence. Try to base your argument strictly upon the evidence.

\* \* \* \* \* \*

"MR. ZETTLER: You know, Mr. Douglass is a very sharp attorney, and these girls are novices, and they aren't as shrewd as he is, and they sit up there when he wants an answer, they sit up there and get nervous, and they say the first thing they think of.

\* \* \* \* \* \*

"Another point that was brought up about Mary, she testified that the last time she had intercourse with her father was on May the 1st, she thought, and then later on it was brought out, yes, there was a later date. It happened she thinks it was a couple of days before she went to the police department.

"MR. DOUGLASS: Your Honor, that again is a misstatement of the fact. She testified during redirect examination by Mr. Zettler that she still thought the last time was May the 1st.

"MR. ZETTLER: Your Honor, I am going to really object to his popping up at all times. He knows as well as I do the jury will be instructed on the evidence. He is trying to insert his own piece of evidence in here, and I think he should be admonished from doing this.

"THE COURT: Simply try to confine your argument to the facts as much as you possibly can.

You may proceed.

"MR. ZETTLER: In the earlier statement she said it was probably on the 15th. Whether she forgot about that or what, I don't know. I think she probably forgot about it, but then what does Mr. Douglass do? After he brings that out in the statement and he knows in the statement that she said the last time was on the 15th, and it happened around 11:15 at night, he tries to get you to compare what happened at that time on May 1st at 9:00 o'clock at night, and then he says one time at 11:15 at night and the next time at 11:00 o'clock at night, you know, those aren't the same two stories, and what is he trying to do? Confuse you."

In addition to having sustained defense counsel's objections, the court further countered the county attorney's argument by instructing the jury as follows:

"Arguments and comments of counsel are intended to help you in understanding the evidence in applying the law. While arguments are not evidence counsel may argue reasonable inferences from the evidence. If any comment of counsel has no basis in the evidence you are to disregard that comment. \* \* \*"

██ During closing arguments counsel are allowed to draw inferences from and to appraise the evidence which was adduced during the trial. State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970); State v. Stephens, 66 Ariz. 219, 186 P.2d 346 (1947). It is improper, however, for an advocate to express his personal opinion as to a defendant's guilt or innocence, State v. Abney, 103 Ariz. 294, 440 P.2d 914 (1968), or to argue matters which were not or could not have been introduced as evidence. State v. Gonzales, supra. In assessing whether a counsel's transgression beyond the boundaries of permissible argument was so unduly preju-

dicial as to have amounted to a denial of a fair trial, it is · necessary to determine whether, under the circumstances of the particular case, the remarks of counsel were likely to have influenced the jury in reaching a verdict. Sullivan v. State, 47 Ariz. 224, 55 P.2d 312 (1936). ˙It does not necessarily follow from the fact of improper argument that the jury was improperly influenced. Thus, for example, a proper cautionary instruction to the jury may sufficiently mitigate the effects of impermissible argument, State v. Stephens, supra; Blackburn v. State, 31 Ariz. 427, 254 P. 467 (1927) as may the court's sustaining of opposing counsel's objections.

■ In the case before us there is admittedly no doubt that many portions of the county attorney's closing argument were improper. The county attorney did, as defendant suggests, express his personal opinion as to the defendant's guilt, over repeated objections. He avouched the credibility of the State's witnesses and he misstated certain testimony to his own advantage. Under the facts of this particular case, however, we do not feel that the closing argument was sufficiently prejudicial to warrant a reversal. The court did caution the jury not to treat comments of counsel as evidence and to disregard those comments which had no basis in the evidence; and every objection defense counsel interposed was, without exception, sustained. There may, of course, be circumstances under which comments of counsel are so inflammatory, offensive, and prejudicial that even cautionary instructions and the sustaining of objections would fail to cure the defect, see United States v. Haynes, 466 F.2d 1260 (5th Cir. 1972), but such are not the circumstances of this case.

Judgments affirmed.

STRUCKMEYER, and HOLOHAN, JJ., concur.