544 P.2d 270
**STATE of Arizona, Appellee,**

v.

**Lonnie LANDRUM, Appellant.**

**No. I CA–CR 892.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 23, 1975.

Rehearing Denied Jan. 23, 1976.

Review Denied Feb. 10, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Division, and Thomas A. Jacobs, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

## OPINION

HAIRE, Chief Judge, Division 1.

After a trial by jury, appellant was convicted of one count of burglary, first degree, two counts of armed robbery and one count of assault with a deadly weapon. He was sentenced to not less than seven nor more than ten years on the burglary and assault counts and was sentenced to not less than fifteen nor more than twenty years on each count of armed robbery. The sentences were to run concurrently.

On appeal, appellant raises three issues:

1. Whether he was entitled to a new trial because of jury misconduct in arriving at its verdict.

2. Whether the denial of appellant's motion to prohibit impeachment of his testimony by the use of a twelve year old prior conviction was error.

3. Whether the admission into evidence of a reference by a police officer

that appellant refused to talk to him was error.

Facts necessary to the consideration of the issues raised will be set forth in the discussion of each issue.

## JURY MISCONDUCT

Appellant contends that he should have been granted a new trial because the jury considered a fact not in evidence, that the consideration of this evidence violated his right of confrontation under the Sixth Amendment and that the trial judge should have allowed further examination of a juror.

Rule 24.1(c)(3)(i), Rules of Criminal Procedure, provides as follows:

"c. Grounds. The court may grant a new trial for any of the following reasons:

\* \* \* \* \* \*

"(3) A juror or jurors have been guilty of misconduct by:

"(i) Receiving evidence not properly admitted during the trial;"

The trial court may receive oral testimony or affidavits by members of the jury which relate to the conduct of the jury. However, no testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict. Rule 24.1d, Rules of Criminal Procedure, 17 A.R.S.[1]

■ The comments to the rule indicate that the provisions of Rule 24.1d represent a new policy in Arizona which permits the receipt of juror testimony in limited circumstances for the purpose of impeaching the jury's verdict. *Cf. State v. Pearson,* 98 Ariz. 133, 402 P.2d 557 (1965). However, the privacy of the jury's deliberative processes must be carefully protected, and in-

quiry into that process is strictly limited by the provisions of Rule 24.

The comment to Rule 24 further states that the rule adheres closely to the American Bar Association's Standards Relating to Trial by Jury, § 5.7 (Approved Draft, 1968), and the reader is referred to that source for a thorough discussion of the policy reasons for permitting an inquiry concerning juror misconduct, while at the same time prohibiting any inquiry into the subjective motives or mental processes which might have led a juror to assent or dissent from the verdict.

■ With the limitations of Rule 24.1d in mind, we now consider the contentions raised by appellant in his motion for new trial. By way of factual background, there was testimony that the person who entered the house where the crimes were committed was wearing a red wig. At the time of trial, appellant's sister testified as an alibi witness for him. During the hearing on his motion for new trial, he introduced testimony by a juror that one of the other jurors had stated, during jury deliberation, that appellant's sister was wearing a red wig when she testified. Appellant's counsel then asked the juror: "Would you please explain to the prosecution and the court exactly what your impression of the red wig played in the deliberation?" The prosecutor's objection to this question was sustained on the grounds that it inquired into the subjective motives and mental processes of the jury and thus was contrary to Rule 24.1d. However, the court allowed appellant to continue the examination as an offer of proof. The essence of the juror's testimony was that the red wig was discussed, together with the fact the witness was appellant's sister, and that the person or persons who entered the house (where the crime occurred) were allegedly wear-

---

1. Rule 24.1d reads as follows:
"d. Admissibility of Juror Evidence To Impeach the Verdict.
Whenever the validity of a verdict is challenged under Rule 24.1(c)(3), the court may receive the testimony or affidavit of any witness, including members of the jury,

which relates to the conduct of a juror, official of the court, or third person. No testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict."

ing red wigs. The juror also stated that the matter of the red wig was brought out after the first ballot. The court refused to hear further testimony as to whether the first ballot was heavily weighted against the defendant.

We hold that the trial court properly limited appellant's inquiry and did not err in sustaining the state's objection to the question asked by appellant. The question to the juror represented an inquiry concerning the effect of the red wig statement on the jury's deliberations, and thus constituted a direct violation of Rule 24.1d's prohibition against inquiring into the mental processes or subjective motives which lead a juror to assent or dissent from the verdict.

However, the above conclusion does not end our inquiry. Although the trial judge properly denied further questioning concerning the effect of the red wig statement upon the mental processes of the jurors, there still remains the threshold question of whether the red wig observation in and of itself constituted receipt by the jury of "evidence not properly admitted during trial" and, if so, whether it was of such inherent prejudicial effect as to require the granting of appellant's motion for new trial. This being a criminal proceeding, included in this determination is the question of whether appellant's Sixth Amendment right to be confronted with witnesses against him has been violated. *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *United States ex rel. DeLucia v. McMann*, 373 F.2d 759 (2d Cir. 1967).

In our review of many decisions in this area, we have not been able to find any fact situations analogous to that here presented.[2] The cases which have allowed impeachment of the jury verdict deal with situations where facts extraneous to the judicial proceedings have been brought to the jury's attention either through personal knowledge of a juror or through exposition by some third persons, whether a court officer or otherwise.[3] Here appellant does not claim any outside or extrinsic influence on the jury or that any piece of physical evidence or testimony was introduced into the jury's deliberation that was not presented at trial. Rather, the complaint is that a juror commented on her personal observation of physical characteristics of a witness on the witness stand. Appellant's sister testified at the trial and the jury saw her hair on that occasion. Appellant's only argument is that some members of the jury, rightly or wrongly,[4] stated that his sister's hair was a wig. The fact that the jury could observe this fact during trial is undisputed. The intrinsic reasoning by some of the jurors indicated that they thought her hair might have been a wig. However, to inquire into such subjective reasoning by the jury is to violate the policy considerations previously stated. There is no evidence or fact which was presented to the jury which was not filtered through the trial court.

Accordingly, we hold that the jury did not receive evidence not admitted at trial and that appellant's Sixth Amendment right to confront witnesses against him was not violated.

## THE TWELVE YEAR OLD PRIOR CONVICTION

Appellant claims that the trial court should have granted his motion to prohibit impeachment of his testimony with a

---

2. See cases cited in Annot., 58 A.L.R.2d 556, together with A.L.R.2d Later Case Service.

3. We need not (and do not) consider the cases where a juror's testimony is offered only to show a bias (e. g., on religious or racial grounds) against defendant or where a juror who claimed special knowledge on a subject gave what amounted to expert testimony on

matters in issue. *See* Annot., 58 A.L.R.2d 556 (1958).

4. A juror's misconceptions, such as testimony that he misunderstood the instructions of the court or the statements of witnesses may not be received to impeach the verdict. *See* Commentaries, A.B.A. Standards Relating to Trial by Jury, § 5.7.

twelve year old prior conviction for armed robbery. He alleges that because the court denied this motion, he did not testify on his own behalf.

■ The rules relating to impeachment by a prior conviction have been stated repeatedly by our Supreme Court. A witness's credibility may be impeached by a prior felony conviction. *State v. Owen,* 101 Ariz. 156, 416 P.2d 589 (1966); *State v. King,* 110 Ariz. 36, 514 P.2d 1032 (1973). This prior conviction cannot, however, be so remote as to have reasonably lost all relevancy with respect to the purpose for which it is introduced. *State v. Harvill,* 89 Ariz. 340, 362 P.2d 663 (1961). In applying this rule, our Supreme Court has held that a nine year old conviction could be admitted for impeachment purposes. *State v. Phillips,* 102 Ariz. 377, 430 P.2d 139 (1967) and that an eleven year old conviction was valid for impeachment purposes, *King, supra.* Notwithstanding an extensive opinion by Division 2 of this Court in *State v. Mayes,* 21 Ariz.App. 87, 515 P.2d 1185 (1973) criticizing this rule, our Supreme Court has reaffirmed its prior holdings in *State v. Mayes,* 110 Ariz. 318, 518 P.2d 568 (1974).

■■ The admissibility of a prior conviction for impeachment purposes is generally left to the sound discretion of the trial court. *King, supra.* In determining whether a prior conviction is too remote to be probative of a witness's veracity the court should take into account such factors as the length of time which has elapsed since the conviction, length of the former imprisonment, subsequent conduct and present age of the witness, intervening circumstances and the nature of the prior offense. *King, supra.* Appellant claims that the court did not take these factors into consideration in arriving at its verdict.

■ However, the record establishes that the court was aware and considered the fact that the conviction was in 1962, that defendant was convicted of armed robbery, a felony, and was sentenced to from five to seven years in the Arizona State Prison. Appellant offered no further evidence as to why the conviction did not reflect upon his credibility at the present time. Contrary to appellant's assertion, the court did not cut off any consideration of whether the prior conviction related to the issue of credibility. Rather, the trial court stated that it was his responsibility to determine whether it was an "ancient conviction". The term "ancient conviction" is used by Udall to refer to a conviction which "occurred at a time so remote that it cannot reasonably cast a reflection on [defendant's] credibility." Udall, Arizona Law of Evidence § 67 (1960). This is virtually identical to the standard set forth in *King.* Thus the use of the term "ancient conviction" by the trial court indicates that it understood and applied the legal standard set forth by our Supreme Court. Under these circumstances we cannot say that the trial court abused its discretion and that the conviction was not probative in some manner as to defendant's veracity.

## THE COMMENT ON APPELLANT'S SILENCE

Appellant claims that a reference to his refusal to talk to a police officer constituted fundamental error requiring reversal. The relevant portion of the direct examination of the police officer was as follows:

"Q. Now, what did you do when you got to the County Hospital?

"A. [By Police Detective Rockyvich]: We had information that there was a man at the County Hospital that could have maybe been involved in a situation at the house.

"Q. Okay.

"A. He was injured and some officers were there with him.

"Q. Did you see that person?

"A. Yes.

"Q. Do you see him in the Courtroom today?

"A. Yes. He's sitting right there [indicating].

"Q. The defendant?

"A. Yes.

"Q. Okay. Now, what did you do after you saw the defendant?

"A. I wanted to talk to him but he didn't want to talk to me, he didn't have anything to say.

"Q. Okay.

"A. And I impounded his clothes that were there."

No objection was made to the testimony.

■ It is well established that testimony concerning a defendant's silence in response to questions in situations where the defendant has a constitutional right to remain silent is not admissible. *State v. Finn,* 111 Ariz. 271, 528 P.2d 615 (1974). Further, ordinarily, a reference to defendant's silence in such situations is fundamental error. *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973).

■ However, in the current case, appellant stipulated that his response to the police officer could be admitted. At the time scheduled for the voluntariness hearing on appellant's statements, the following colloquy occurred:

"The Court, in reviewing Part Two of the Omnibus Hearing form notes that there is a State's Motion to amend to alledge [sic] a prior conviction at the time of trial and the State's Motion to determine the voluntariness of statements of the defendant. Have either of those matters been resolved?

"Mr. Martin [appellant's counsel]: He didn't make any statements.

"Mr. Lynch [the prosecutor]: He didn't say anything.

"The Court: I take it that the State's withdrawing the request of the Omnibus Hearing requesting statements, admissions, or confessions that may have been made.

"Mr. Lynch: There were some statements that may come out and if the defense won't object to them. All he said, 'I don't know anything about a robbery.'

"The Court: I'm asking at this point whether you withdraw your request for a Voluntariness Hearing?

"Mr. Lynch: Assuming defense counsel won't object.

"Mr. Martin: Do you intend to put on the Officer who made the arrest and gave him his rights and don't have anything to do with the robbery.

"Mr. Lynch: I may do that.

"Mr. Martin: Then I'll stipulate that that can come in. With that concession on the record—rather, I take it you withdraw your request for a Voluntariness Hearing?

"Mr. Lynch: This is correct."

When the police officer testified he did not relate that appellant stated "I don't know anything about a robbery", but rather stated that appellant didn't have anything to say. Thus the problem arises from the police officer not stating appellant's response as previously indicated. The state dropped the line of questioning at that point and did not pursue it further.

We note that the prosecutor did not directly elicit this testimony, nor was the testimony a part of a line of questioning regarding an interrogation of appellant. The statement did not come after a recitation of appellant's Miranda rights nor together with a description of the questions asked the appellant. Rather, this testimony came solely as a part of the officer's conduct at the hospital. Further, the prosecutor made no comment or argument from appellant's alleged silence nor did anyone else refer to this testimony in the presence of the jury. Considering all these circumstances we find any error which might have been committed harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Anderson, supra.*

In the current case, one victim made a positive identification of appellant, stating he had known him for fifteen years and

**452**

recognized him by his voice and build. Another witness identified appellant at the hospital where appellant had gone for treatment of a gunshot wound by the clothes he was wearing. Further, the police found a trail of blood leading from the house in the direction the thief ran. A witness stated that she saw the thief shoot himself during the burglary. Appellant was apprehended at the hospital while he was being treated for a gunshot wound. Although appellant presented his sister as an alibi witness, the jury clearly believed the victims. In light of this overwhelming evidence against appellant, the isolated and oblique reference to the fact that appellant had nothing to say to the police officers is not reversible error.

Judgment affirmed.

JACOBSON, P. J., and EUBANK, J., concur.