580 P.2d 355

**STATE of Arizona, Appellee,**

v.

**Jerry Wayne CALLAHAN, Appellant.**

**No. 1 CA-CR 2391.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 28, 1978.

Rehearing Denied May 2, 1978.

Review Denied June 6, 1978.

Bruce E. Babbitt, Former Attys. Gen. by William F. Schafer, III, Chief Counsel, Crim. Div., Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

William C. Porter, Kingman, for appellant.

## OPINION

FROEB, Chief Judge.

Appellant was convicted of arson, second-degree, in violation of A.R.S. § 13–232, and sentenced for not less than two nor more than ten years in the Arizona State Prison. The issues on appeal relate to claimed jury misconduct and the effect of correspondence directed to the trial judge prior to sentencing.

Appellant Jerry Wayne Callahan ran a recreational vehicle business out of the Lake Havasu City Western Auto Store building. He was indicted for the crime of arson, second-degree, after the building burned. The State's case against Callahan consisted entirely of circumstantial evidence. The jury evidently thought the case was closed. After nine hours of deliberation on the first day, the vote was six to two. After another one and a half hours of deliberation on the second day, the jury returned a verdict of guilty. When the jury was polled, each juror answered that the verdict was his.

The foreman of the jury stated in an affidavit that the jury considered Callahan's failure to take the stand during the trial and that, in his opinion, Callahan's failure to testify was a factor in reaching the verdict. In denying Callahan's motion for a new trial, the trial judge ruled that he could not consider the juror affidavit because it was not misconduct recognizable within R.Crim.Proc., Rule 24.1(c)(3). In this appeal Callahan attacks the trial judge's ruling on two grounds: one is evidentiary and the other is constitutional.

At the request of the defense, the trial judge instructed the jury on the defendant's right not to testify as follows:

The State must prove all of its case against this defendant with evidence that the State itself gathers. Therefore, the defendant is not required to testify. The decision on whether to testify is left to the defendant acting with the advice of his attorney. You must not conclude that the defendant is likely to be guilty because he did not testify. You must not

discuss this fact or let it affect your deliberation in any way.[1]

Callahan's evidentiary contention is that, in alleging jury conduct in disregard of the instruction, the jury affidavit comes within Rule 24.1(c)(3)[2] and, therefore, should have been considered by the trial judge in his ruling on Callahan's motion for a new trial as authorized by R.Crim.Proc., Rule 24.1(d).[3] The appellant argues that the jury deliberation on his failure to testify is tantamount to receiving evidence not properly admitted during the trial. Alternatively, he argues that the trial court's ruling that the affidavit could not be admitted because it did not establish misconduct specifically set forth in Rule 24.1(c)(3) is contrary to legislative intent and would make a mockery of jury instructions and the criminal defendant's right not to take the stand. Callahan suggests that the rule is broad enough to include the type of misconduct involved in this case.

Prior to the adoption of the Rules of Criminal Procedure in 1973, Arizona followed the general rule that affidavits of jurors were not admissible to impeach a verdict. *State v. Pearson,* 98 Ariz. 133, 402 P.2d 557 (1965). The rule extended to all matters inherent in the verdict.

The policies behind this rule are the protection of the finality of verdicts[4] and the prevention of undue harassment of jurors.[5] These policies are evidenced by Rule 24.1(d). Under that rule the trial court may receive testimony or affidavits of members of the jury which relate to the conduct of the jury. However, the rule specifically forbids the reception of any testimony or affidavits which inquire into the subjective motives or mental processes which led a juror to his verdict.

This court in *State v. Landrum,* 25 Ariz. App. 446, 448, 544 P.2d 270, 272 (1975) stated:

[T]he provisions of Rule 24.1d represent a new policy in Arizona which permits the receipt of juror testimony in limited circumstances for the purpose of impeaching the jury's verdict. *Cf. State v. Pearson,* 98 Ariz. 133, 402 P.2d 557 (1965). However, the privacy of the jury's deliberative processes must be carefully protected, and inquiry into that process is strictly limited by the provisions of Rule 24.[6]

---

1. The instruction given by the court, with a minor omission not affecting its substance, is R.A.J.I. C.S. 8.

2. Rule 24.1(c) provides:
   The court may grant a new trial for any of the following reasons:

   (3) A juror or jurors have been guilty of misconduct by:
   (i) Receiving evidence not properly admitted during the trial;
   (ii) Deciding the verdict by lot;
   (iii) Perjuring himself or willfully failing to respond fully to a direct question posed during the voir dire examination;
   (iv) Receiving a bribe or pledging his vote in any other way;
   (v) Becoming intoxicated during the course of the deliberations; or
   (vi) Conversing before the verdict with any interested party about the outcome of the case;

3. Rule 24.1(d) provides:
   Whenever the validity of a verdict is challenged under Rule 24.1(c)(3), the court may receive the testimony or affidavit of any witness, including members of the jury, which relates to the conduct of a juror, official of the court, or third person. No testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict.

4. *Board of Trustees Eloy Elementary Sch. Dist. v. McEwen,* 6 Ariz.App. 148, 430 P.2d 727 (1967); *State v. Davis,* 529 S.W.2d 10 (Mo.App. 1975); *McCormick's Handbook of the Law of Evidence* 148 (2d ed. 1972).

5. *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Valley National Bank v. Haney,* 27 Ariz.App. 692, 558 P.2d 720 (1976); *Board of Trustees Eloy Elementary Sch. Dist. v. McEwen,* 6 Ariz.App. 148, 430 P.2d 727 (1967); *Stinson v. State,* 262 Ind. 189, 313 N.E.2d 699 (1974).

6. The comment to Rule 24.1(c) states:
   Paragraph (3) lists 6 explicit types of jury misconduct and is intended to be construed to exclude all others. The greater specificity of this rule is necessitated by Rule 24.1(d), which allows much more liberal use of juror testimony to impeach a verdict than was formerly permitted. Since that section is not intended

In response to appellant's contention that the jury misconduct in this case amounted to receiving evidence not admitted during trial, we find *State v. Landrum* controlling. In *Landrum* there was testimony that the person who entered the house where the crimes were committed was wearing a red wig. The defendant's sister testified as an alibi witness. During the hearing on the defendant's motion for new trial, the defendant introduced testimony by a juror that one of the other jurors had stated, during deliberation, that the defendant's sister was wearing a red wig when she testified. In holding that the jury did not receive evidence not admitted at trial, this court said:

> Here appellant does not claim any outside or extrinsic influence on the jury or that any piece of physical evidence or testimony was introduced into the jury's deliberation that was not presented at trial. Rather, the complaint is that a juror commented on her personal observation of physical characteristics of a witness on the witness stand. Appellant's sister testified at the trial and the jury saw her hair on that occasion. Appellant's only argument is that some members of the jury, rightly or wrongly, stated that his sister's hair was a wig. The fact that the jury could observe this fact during trial is undisputed. The intrinsic reasoning by some of the jurors indicated that they thought her hair might have been a wig. However, to inquire into such subjective reasoning by the jury is to violate the policy considerations previously stated. There is no evidence or fact which was presented to the jury which was not filtered through the trial court. 25 Ariz. App. at 449, 544 P.2d at 273 (footnote omitted).

■ By the same reasoning we likewise conclude that the jury in this case did not receive evidence not admitted during trial. Since the jury's discussion of Callahan's failure to take the stand does not fall within one of the six enumerated types of jury misconduct in Rule 24.1(c)(3), the affidavit cannot be the basis for impeaching the jury's verdict or granting a new trial. *See* comment to Rule 24.1(c).

■ It is also clear that appellant seeks to impeach the jury verdict by going into the "subjective motives or mental processes" by which the jurors reached their verdict. This is prohibited by Rule 24.1(d). The trial court properly refused to consider the juror's affidavit in deciding whether or not to grant a new trial. *See State v. Myers,* 215 Kan. 600, 527 P.2d 1053 (1974); *State v. Gee,* 28 Utah 2d 96, 498 P.2d 662 (1972).

■ Callahan contends that, if the trial judge interpreted the rules of evidence correctly, as we have held he did, then it was nevertheless error to deny a new trial because those rules are outweighed by and, therefore, must give way to, his privilege against self-incrimination. Appellant argues that he was denied a fair trial because the Arizona rules of evidence were applied to deny him his constitutional right to remain silent, as expressed in U.S.Const. Amend. V; Ariz.Const. art. 2, § 10; and A.R.S. § 13–163(B).

In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the defendant was thwarted in his attempt to present evidence which was critical to his defense by the strict application of Mississippi hearsay and impeachment rules. The United States Supreme Court held that the application of those rules rendered the defendant's trial fundamentally unfair and deprived him of due process of law. The court found that, under the circumstances of the case, although the state's interests involved were important, they were outweighed by the defendant's right to present witnesses in his own defense and to confront and cross-examine witnesses against him.

---

to permit a full scale judicial investigation of jury deliberations in every case, the operational definition of juror misconduct is restricted to

the six blatant forms enumerated in Rule 24.-1(c)(3).

The United States Supreme Court reached the same conclusion in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Green was a crucial witness for the prosecution in that case. The trial court, relying upon an Alaska Rule of Children's Procedure and an Alaska statutory provision, granted the prosecution's motion for a protective order preventing any reference during cross-examination to Green's juvenile record. Finding this a violation of the Confrontation Clause of the United States Constitution, the Supreme Court noted that the state could have protected Green from exposure of his juvenile adjudication by refraining from using him to make out its case. The court held that the Alaska rule giving confidentiality to juvenile records must give way to the fundamental right of cross-examination guaranteed by the Confrontation Clause.

The holdings of the *Chambers* and *Davis* cases do not provide a controlling principle here. In this case there was no denial of the defendant's privilege against self-incrimination. Callahan chose not to take the stand. Deciding whether or not to testify on his own behalf was a conscious and deliberate decision on his part. In making the decision he had to weigh the risks involved on either side, something frequently required in criminal cases. The mere fact that a defendant might not like the adverse inferences that could be drawn from his failure to take the stand does not mean that he is deprived of his right not to take the stand. Unlike *Chambers* and *Davis* where the state through its rules of evidence prevented the defendant from exercising his constitutional rights, the rules of evidence in this case presented no such obstacle. Indeed, Callahan exercised his right not to take the stand. He only complains of the consequences of the choice he made. Since we find no denial of Callahan's privilege against self-incrimination, we do not reach the question of balancing the protection of the constitutional right against the state's interests involved in enforcing its rules of evidence which the United States Supreme Court faced in *Chambers* and *Davis.*

■ The second issue on this appeal concerns the effect of correspondence directed to the trial judge prior to sentencing. The chief of the Lake Havasu City Fire Department was a witness at the trial. Between the time of the trial and the time set for judgment and sentencing, the fire chief wrote a letter to the chief justice of the Arizona Supreme Court complaining of alleged improprieties and asking for an investigation into the conduct of the case by the trial judge. The complaints were in regard to (1) the ordering by the trial judge of polygraph tests for the defendant prior to sentencing; (2) the unlikelihood of a jail sentence because of the unwillingness of Mohave County judges to impose jail sentences in white collar crime cases; (3) the failure to prosecute the operator of the Western Auto Store; and (4) the particular trial judge's dislike for the prosecution of arson crimes. The chief justice referred the matter to an associate justice who sent the trial judge a copy of the letter with a cover letter asking him to call as soon as possible concerning the letter.

The trial judge made full disclosure to the parties of the letters and offered to disqualify himself from further proceedings. The defense declined the offer. Callahan's motion for a new trial based upon the transmission of the letters claimed prejudicial interference with the sentencing duties of the trial judge. The motion was denied and the defendant was adjudged guilty and sentenced to two to ten years imprisonment.

Callahan argues that the transmission of the fire chief's letter by the Supreme Court to the trial judge played a role in the imposition of the sentence and made it impossible for him to receive a fair sentence. Callahan complains that he was placed, through no fault of his own, in an unfair position of having to choose between continuing in the case with a judge who admitted that he had been "put at a disadvantage" by the letters or settling for a new judge who would have been unfamiliar with the prior proceedings in the case.

We find no reversible error present in this issue. There is no showing that the trial judge was influenced by the correspondence. Moreover, by agreeing to be sentenced by the same judge, appellant waived any claim he might have had directed toward bias on the part of the sentencing judge. With full knowledge of the facts relevant to his decision and with the opportunity to disqualify the judge, Callahan chose to face the same judge for sentencing. He, therefore, waived the right to raise the issue on appeal.

Affirmed.

HAIRE, P. J., and NELSON, J., concurring.