635 P.2d 873

The STATE of Arizona, Appellant,

v.

Thomas Dale COLLINS, Appellee.

No. 2 CA–CR 2043.

Court of Appeals of Arizona,
Division 2.

July 27, 1981.

Rehearing Denied Sept. 4, 1981.

Review Denied Oct. 6, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Jessica Gifford and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellant.

Donald C. Premeau, Globe, for appellee.

## OPINION

HATHAWAY, Chief Judge.

Did the trial court abuse its discretion in granting defendant's motion for a new trial on the ground of jury misconduct? That is the sole question on appeal.

Collins was charged with driving while intoxicated, with a prior D.W.I. conviction within the preceding 24 months, and was found guilty by a jury. Prior to trial, the court ruled that the state could not introduce into evidence breathalyzer test results, as required by *Scales v. City Court of Mesa*, 122 Ariz. 231, 594 P.2d 97 (1979). Consequently, proof of Collins' intoxication at the time of his arrest depended upon the testimony of police officers.

During the cross-examination of one officer who had testified that he had advised Collins not to drive his car from the impound lot,[1] defense counsel asked him "Why?" The officer responded:

"I was aware of his breathalyzer reading at the time of his arrest at 1:00 o'clock."

Defense counsel moved for a mistrial, which was denied.[2] The court, however, ordered the response stricken and directed the jury to disregard it.

In support of his motion for new trial, Collins submitted an affidavit of the jury foreman which stated in part:

"(3) That during the course of said trial, I did make written notes questioning

---

1. Prior to his arrest at 4:46 a. m. for the instant offense, Collins had been arrested at 1:41 a. m. for driving while intoxicated, and had been released on bail.

2. The court correctly concluded that the answer was not unresponsive, as argued by defense counsel.

why no breathalyzer test or results were brought out and in particular, I made a written note of Officer Ambos' statement referring to a breathalyzer reading.

4) That I did bring up the breathalyzer issue to the other jurors during the course of the jurors' deliberations.

5) That during said deliberations, I referred to my notes made during the trial reference why no breathalyzer was brought out, and Officer Amobs' [sic] statement.

6) The breathalyzer matter was considered by me and did bother me during the deliberations, and I considered it even though the Court had told us not to.

7) During said deliberations, I read my notes reference the breathalyzer to the other jurors."

At the hearing on the motion for new trial, the trial judge limited his consideration of the juror's affidavit to the part of paragraph three that read, "I made a written note of Officer Ambos' statement referring to a breathalyzer reading," and to paragraph seven, which read, "During said deliberations, I read my notes reference the breathalyzer to the other jurors."

■ We do not interfere with the trial court's decision to grant a new trial to a defendant unless the state can affirmatively show the trial court acted arbitrarily or abused its discretion. *State v. Cruz*, 121 Ariz. 233, 589 P.2d 1315 (App.1978).

Rule 24.1, Arizona Rules of Criminal Procedure, allows the receipt of juror affidavits to impeach a verdict. It changes the old rule, which considered a juror incompetent to testify as to matters inherent in the verdict.

The rule does not allow such affidavits if they reflect the "subjective motives or mental processes which led a juror to assent or dissent from the verdict." It does, however, allow evidence of jury misconduct, including the receipt of evidence "not properly admitted during the trial." The rule thus seeks to protect the defendant's Sixth Amendment right to confront adverse witnesses, as well as the court's interest in the finality of verdicts and the juror's interest in freedom from harassment after discharge. *See State v. Callahan*, 119 Ariz. 217, 580 P.2d 355 (App.1978); American Bar Association, Standards Relating to Trial by Jury, Sec. 5.7 (Tentative Draft 1968).

■ The issue here, then, is whether the jury foreman's reading of his notes can be characterized as the improper receipt of evidence or, rather, as involving the mental processes of a juror in reaching a verdict. We believe Arizona precedent indicates that this conduct is properly characterized as involving the mental processes of a juror. As such, the trial court should have refused to consider the affidavit altogether when deciding the motion for new trial.

In *State v. Callahan*, supra, the jury disregarded an instruction not to consider the defendant's failure to testify in his own behalf. The trial court in that case refused to accept an affidavit from one of the jurors to prove that they did in fact consider this. On appeal, the court rejected the argument that the jurors were guilty of misconduct by receiving evidence not admitted during trial. It pointed out that rule 24.1 is a very limited exception to the policy that prevents inquiry into the private deliberations of the jury. The court held that the jury's consideration of the defendant's failure to testify was not a type of jury misconduct as enumerated in the rule and that acceptance of the affidavit by the trial judge would have constituted an improper inquiry into the "subjective motives or mental processes" of the jury.

The facts in the instant case are similar to those in *Callahan*. Here, the jurors were told to disregard officer Ambos' testimony but did in fact consider the testimony during their deliberations, questioning the absence of evidence of a breathalyzer test.

It would be clear that *Callahan* controls this case if the affidavit in question here had attested that the jurors remembered the testimony and then considered it in arriving at their verdict. *See also State v.*

*Landrum,* 25 Ariz.App. 446, 544 P.2d 270 (1975); *State v. Steger,* 216 Kan. 534, 532 P.2d 1115 (1975); *State v. Thayer,* 80 N.M. 579, 458 P.2d 831 (1969). The distinction proposed for the instant case is that the juryman did not merely remember the stricken testimony, but that he aided his memory with his notes. According to Judge Rood, ". . . the thing that gives me the problem is the flat-out statement of [the] juror that he read the other members of the jury evidence which had been excluded."

This proposed distinction is without merit. Arizona allows the taking of notes and their use by jurors during deliberations. We see no difference analytically between telling other jurors about testimony one remembers and telling them about such testimony with the aid of one's notes. A juror "should no more be forced to divulge his written than his subjective memories." *Holcomb v. State,* 130 Ga.App. 154, 202 S.E.2d 529 (1973). Reading one's own notes during deliberations, therefore, is in no way analogous to reading from an extraneous exhibit, not admitted into evidence, which was accidentally left in the juryroom, as was the case in *State v. Cruz,* 121 Ariz. 283, 589 P.2d 1315 (App.1978).

In addition, the evidence in the affidavit is not acceptable merely because it is objectively verifiable. While some courts allow inquiry into any conduct in the juryroom that is subject to corroboration by other jurors, Arizona has never adopted this approach. Furthermore, the commentary to ABA rule 5.7 (upon which Arizona rule 24.1 is based) rejects this as an unwise extension of the limited investigation into the jury's activities. The potential harm to the "sanctity of the jury process" is great where convicted defendants are encouraged to " 'intimidate, beset and harass' . . . a discharged jury in an effort to establish possible grounds for a new trial." *Parker v. Gladden,* 385 U.S. 363, 369, 87 S.Ct. 468, 473, 17 L.Ed.2d 420 (1966) (Harlan, J., Dissenting).

The order granting a new trial is reversed.

BIRDSALL, J., concurs.

HOWARD, Judge, dissenting.

The majority's reliance on *State v. Callahan,* supra, is misplaced. In *Callahan* it is clear that no reception of evidence was involved. The jury simply disregarded an instruction and talked about the fact that the defendant did not take the stand. The situation here is different. In addition to ignoring the judge's instruction, the jury considered evidence which had been stricken. The jury therefore, received ". . . evidence not properly admitted during trial."

The juror's affidavit did not relate to his "subjective motives or mental processes", as the terms are used in Rule 24.1(d). It related to his conduct. How else can one prove jury misconduct and its prejudicial effect? Now United States Supreme Court Justice, William Brennan, stated in *State v. Kociolek,* 20 N.J. 92, 118 A.2d 812 (1955):

". . . The better reasoned decisions support the exclusion of jurors' testimony as to their mental processes, not upon the discredited basis of the policies against self-stultification and avoidance of jury tampering, perjury or other fraudulent practices, but upon the sounder ground that, being personal to each juror, the working of the mind of any of them cannot be subjected to the test of other testimony, and therefore that such testimony should not be received to overthrow the verdict to which all assented. [citations omitted] Judge Jayne cogently observed in *Pulitzer v. Martin S. Ribsam & Sons Co.,* 19 N.J.Misc. 233, 234, 18 A.2d 726, 727 (Sup.Ct.1941), that a verdict in essence represents 'the merger of a variety of ideas, reflections and sentiments; a compound in which only the omniscient could identify the component parts and accurately ascribe to each its relative influence generating the ultimate product. No one but the jurors can tell what was put into it, and the jurors are not permitted to say.'

Where, however, jurors' testimony goes, not to the motives or methods or processes by which they reached the ver-

dict, but merely to the existence of conditions or the occurrence of events bearing on the verdict, that basis of policy does not exist, and this whether the condition happens or the event occurs in or outside of the jury room." 118 A.2d at 816.

The trial court properly granted a new trial. See *Stevenson v. State,* 89 Tex.Cr.R. 143, 230 S.W. 174 (1921).

I would affirm.