NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DARRELL BRYANT KETCHNER, *Appellant.*

No. 1 CA-CR 25-0120

FILED 12-18-2025

Appeal from the Superior Court in Mohave County
No. S8015CR200900715
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the Court's decision in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

---

**W I L L I A M S**, Judge:

¶1        Darrell Bryant Ketchner appeals the superior court's denial of his motion to vacate a judgment. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        In 1997, Ketchner began a romantic relationship with Jennifer, a mother of two daughters—Ariel and Kenzie. *State v. Ketchner* (*Ketchner I*), 236 Ariz. 262, 263, ¶ 2 (2014). During the decade that followed, Ketchner and Jennifer had three children together. *State v. Ketchner* (*Ketchner II*), 1 CA-CR 22-0458, 2024 WL 1924961, at *1, ¶ 2 (Ariz. App. May 2, 2024) (mem. decision).

¶3        In 2008, Ketchner's relationship with Jennifer "became increasingly volatile." *Ketchner I*, 236 Ariz. at 263, ¶ 3. Between January 2008 and March 2009, "the couple had several verbal and physical altercations," with Ketchner threatening to kill Jennifer, Kenzie, and Kenzie's boyfriend. *Id.* at 263, ¶¶ 3-4. In response to these violent encounters, Jennifer petitioned for and obtained orders of protection. *Id.* at ¶ 3.

¶4        On July 4, 2009, Ketchner entered Jennifer's home, unannounced and uninvited. *Ketchner II*, 1 CA-CR 22-0458, at *1, ¶ 7. He immediately began hitting Jennifer. *Id.* Kenzie's boyfriend fled "to get help" while Kenzie and the younger children "escaped the house through a window," leaving only Jennifer and Ariel in the home with Ketchner. *Id.* "Ketchner pursued Jennifer outside to the driveway, where she screamed, 'He's trying to kill me, he's stabbing me.'" *Ketchner I*, 236 Ariz. at 263, ¶ 8. A neighbor came outside and yelled at Ketchner to stop. *Id.* at 263-64, ¶ 8. He did, but then ran back inside the home, retrieved a gun from Jennifer's bedroom, and returned to the driveway where he shot Jennifer in the head. *Id.* at 264, ¶ 8. Neighbors called 9-1-1, but Ketchner ran away before police and emergency personnel arrived. *Id.* at 264, ¶¶ 8-9. The responders found Ariel lying in a pool of blood in Jennifer's bedroom, having suffered eight

stab wounds. *Id.* at 364, ¶ 9. Ariel later died from her injuries, but Jennifer survived. *Id.*

¶5　　　　The State charged Ketchner with first-degree murder, attempted first-degree murder, three counts of aggravated assault, first-degree burglary, and misconduct involving weapons. *Id.* at ¶ 11. Ketchner pled guilty to the weapons charge, and a jury convicted him on the remaining counts, finding he committed felony murder but unable to reach a consensus on premeditated murder. *Id.* at ¶¶ 11-12. The jurors also found three aggravating circumstances, and after considering evidence during the penalty phase, determined Ketchner should be sentenced to death. *Id.* at ¶ 12. The superior court sentenced Ketchner to death for the murder and "imposed prison sentences totaling seventy-five years for the non-capital counts." *Id.*

¶6　　　　On appeal, the Arizona Supreme Court determined the superior court erroneously admitted expert opinion profile evidence "about separation violence, lethality factors, and [other] characteristics common to domestic abusers." *Id.* at 265, 266-67, ¶¶ 19, 24-25. Because the profile evidence pertained to "a key issue before the jury—whether Ketchner entered Jennifer's house with the intent to commit a felony"—the Supreme Court reversed Ketchner's convictions and sentences for first-degree murder and first-degree burglary and remanded for a new trial on those counts. *Id.* at 266–67, ¶¶ 25, 27. The Supreme Court affirmed Ketchner's remaining convictions and sentences. *Id.* at 267, ¶ 27.

¶7　　　　At the retrial, Ketchner admitted killing Ariel and shooting Jennifer but claimed he acted in self-defense. *Ketchner II*, 1 CA-CR 22-0458, at *2, ¶ 12. Rejecting the self-defense claim, the jury found Ketchner guilty on both counts. *Id.* The superior court sentenced Ketchner to natural life for the murder conviction and a consecutive sentence of twenty-one years' imprisonment for the burglary conviction, both to run consecutive to the sentences affirmed by the Supreme Court following the first trial.[1] *Id.*

¶8　　　　After appealing the convictions and sentences from the second trial, "Ketchner moved to vacate the first-degree murder conviction and sentence based on newly discovered material facts." *Id.* at *13, ¶ 77. "This court stayed the appeal pending the superior court's ruling on the motion." *Id.* The superior court denied the motion to vacate the judgment and Ketchner petitioned this court to review that ruling as part of the appeal. *Id.* at ¶¶ 78-79. Because Ketchner did not separately appeal the

---

[1]　　　　On remand, the State withdrew its notice to seek the death penalty.

superior court's ruling on the motion to vacate, an appealable order, this court determined it lacked jurisdiction to review the denial and affirmed the convictions and sentences from the second trial. *Id.* at *13-14, ¶¶ 79-80, 83.

**¶9**        Once this Court issued a mandate on the direct appeal from the second trial, Ketchner petitioned the superior court for permission to file a delayed notice of appeal from the denial of his motion to vacate the judgment. The superior court granted Ketchner's motion, and he so filed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(3).

## DISCUSSION

**¶10**        Ketchner challenges the superior court's denial of his motion to vacate the first-degree murder conviction. He argues information discovered after the trial—during his investigator's apparent discussions with two jurors—calls into question the validity of the first-degree murder verdict. According to Ketchner, the jurors expressed "confusion regarding the verdict forms" and denied any "recollection" of voting on felony murder.

**¶11**        Under Arizona Rules of Criminal Procedure 24.2(a)(2) and 32.1(e), a court "must vacate a judgment" if it finds "newly discovered material facts probably exist, and those facts probably would have changed the judgment or sentence." "Newly discovered material facts exist if: (1) the facts were discovered after the trial or sentencing; (2) the defendant exercised due diligence in discovering these facts; and (3) the newly discovered facts are material[.]" Ariz. R. Crim. P. 32.1(e).

**¶12**        We review a superior court's denial of a motion to vacate a judgment for an abuse of discretion. *State v. Parker*, 231 Ariz. 391, 408, ¶ 78 (2013); *see also State v. Serna*, 167 Ariz. 373, 374 (1991) ("Absent an abuse of discretion, we will not disturb a trial judge's determination that a new trial for newly discovered evidence is not necessary."). "We afford trial judges great discretion given their special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record." *Parker*, 231 Ariz. at 408, ¶ 78 (citation modified).

**¶13**        At trial, Ketchner did not object to the final jury instructions or the verdict forms. As relevant here, the superior court instructed the jurors that:

The crime of burglary in the first degree by domestic violence requires proof of the following:

1. The defendant entered or remained unlawfully in a residential structure; and

2. The defendant intended to commit any theft or felony therein; and

3. The defendant and the victim resided in the same household or have a child in common; and

4. At some time between the moment of entry through flight from the scene, the defendant knowingly possessed a deadly weapon or dangerous instrument.

. . . .

The crime of first degree felony murder requires proof that:

1. The defendant committed or attempted to commit burglary in the first degree by domestic violence; and

2. In the course of and in furtherance of this crime or immediate flight from this crime the defendant caused the death of any person.

The crime of first degree premeditated murder requires proof that the defendant:

1. Caused the death of another person; and

2. Intended or knew that he would cause the death of another person; and

3. Acted with premeditation.

. . . .

You must unanimously agree that the State has proven first degree murder beyond a reasonable doubt before you may find the defendant guilty of first degree murder.

However, all of you do not have to agree on whether it was premeditated murder or felony murder.

The crime of first degree premeditated murder includes the lesser offense of second degree murder.

You may consider the lesser offense of second degree murder if either:

1. You find the defendant not guilty of first degree premeditated murder; or

2. After full and careful consideration of the facts you cannot agree on whether to find the defendant guilty or not guilty of first degree premeditated murder.

You cannot find the defendant guilty of second degree murder unless you find that the State has proved each element of second degree murder beyond a reasonable doubt.

The crime of second degree murder requires proof of the following:

1. The defendant intentionally caused the death of another person; or

2. The defendant caused the death of another person by conduct which the defendant knew would cause death or serious physical injury; or

3. Under circumstances manifesting extreme indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of death, and thereby caused the death of another person.

. . . .

If you determine that the defendant is guilty of either first degree murder or second degree murder, and you have a reasonable doubt as to which it was, you must find the defendant guilty of second degree murder.

¶14        During their deliberations, the jurors submitted three inquiries to the superior court. First, the jurors questioned the definition of burglary, and counsel agreed with the superior court's response instructing the jurors "to rely on the written jury instructions." Next, the jury asked:

Charge is 1st Murder [b]ut, the bottom of the page says if not guilty of <u>Premeditated</u> [sic][.] We have a definition of: 1st deg. Premed. Murder & Felony Murder[.] Is there a definition [of] <u>1st Deg. Murder</u> (is 1st Deg Murder same as Felony Murder?)

With the approval of counsel, the superior court responded:

[T]he State has alleged two theories of first degree murder in Count 1: (1) premeditated, and/or (2) felony murder. Premeditated first degree murder has a lesser included offense of second degree murder. There is no lesser included offense for first degree felony murder.

Lastly, the jury submitted the following combined questions:

1. [I]f we cannot agree on Premeditated Murder, does it automatically drop to <u>Guilty</u> of <u>2nd Degree</u> Murder?

2. Do we have to be unanimous on the 2nd Degree[?]

(<u>This is confusing[.]</u>)

After conferring with counsel and securing their agreement, the superior court responded to the jurors' questions as follows:

1. If you cannot agree on a verdict for premeditated first degree murder, you must consider the lesser included offense of second degree murder. You can find the defendant guilty of an offense, including second degree murder, only if you determine the [S]tate has proven every element of the offense beyond a reasonable doubt.

2. Any verdict reached by the jury must be unanimous.

¶15        The jury found Ketchner guilty of burglary in the first degree by domestic violence. Consistent with the final jury instructions and the superior court's responses to their deliberation questions, the jurors also returned the following first-degree murder verdict form:

We, the jury, duly empanelled [sic] and sworn in the above-entitled cause, and upon our oaths, do find the Defendant, on the charge of First Degree Murder (Count 1 – [Ariel]), as follows (check only one):

____ Not guilty

7

 X  Guilty

**Complete this portion of the verdict form only if you find the defendant "Guilty" of First Degree Murder.**

Please indicate the number of jurors who found beyond a reasonable doubt that the offense of "first-degree murder" was committed as follows:

 10  Premeditated murder

 12  Felony murder

 10  Both premeditated murder and felony murder

**Complete this portion of the verdict form only if you find the defendant "Not Guilty" of Premeditated First Degree Murder or are unable to agree on a verdict for Premeditated First Degree Murder.**

We, the jury, duly empanelled [sic] and sworn in the above-entitled cause, and upon our oaths, do find the Defendant, on the charge of Second Degree Murder, as follows (check only one):

___ Not guilty

 X  Guilty

**¶16**      After the jurors rendered their verdicts, the superior court asked whether "either party wish[ed] to poll the jury[.]" Both the prosecutor and defense counsel declined.

**¶17**      In his motion to vacate the judgment, Ketchner asserted the jurors: (1) misunderstood the verdict forms, (2) failed to vote on felony murder, and (3) intended to enter a verdict finding him guilty of only second-degree murder. To support his motion, Ketchner attached: (1) a signed "affidavit" from his investigator stating that Juror No. 11 "did not understand the jury instructions" and both Juror No. 11 and another apparent juror "d[id] not remember voting on felony murder"; and (2) a signed "declaration" from Juror No. 11 (though written in the third-person) detailing the jury's deliberations, confirming the defense investigator's report that she did not understand the jury instructions or recall voting on felony murder, and stating the jurors unanimously agreed Ketchner killed Ariel but only ten jurors believed he acted with premeditation.

¶18        When challenged by the State, defense counsel conceded that neither the defense investigator nor Juror No. 11 were under oath when they signed their respective statements, and therefore their statements do not qualify as affidavits. *See In re Wetzel*, 143 Ariz. 35, 43 (1984) (explaining an affidavit "is a signed, written statement, made under oath before an officer authorized to administer an oath or affirmation in which the affiant vouches that what is stated is true").

¶19        Regardless, after hearing oral argument on the motion, the superior court found the evidence presented at trial, the jury instructions, the jury deliberation questions and answers, and the verdict forms "establish[ed] that the jury was not confused." The court denied Ketchner's motion to vacate accordingly.

¶20        "[A]s a general rule, a juror's evidence will not be received to impeach a verdict." *State v. Pearson*, 98 Ariz. 133, 136 (1965); *see also State v. Acuna Valenzuela,* 245 Ariz. 197, 215, ¶ 60 (2018) (noting a "juror's testimony is not admissible to impeach the verdict"); *State v. Cookus*, 115 Ariz. 99, 106 (1977) ("[A] verdict may not be impeached by the affidavit of a juror who has agreed to the verdict."). While a court may consider the testimony or affidavit of a juror for the limited purpose of establishing juror misconduct, *see* Ariz. R. Crim. P. 24.1(d), it will not receive such evidence to impeach "matters inherent in the verdict," namely, the "subjective motives or mental processes which led a juror to his verdict." *State v. Callahan*, 119 Ariz. 217, 219 (App. 1978). Nor will a court consider the affidavit of a third person purporting to recount a juror's statements concerning jury deliberations. *See Pearson*, 98 Ariz. at 136. These rules serve "to protect the process of frank and conscientious jury deliberations and the finality of jury verdicts." *Acuna Valenzuela*, 245 Ariz. at 215, ¶ 60 (citation modified). "If a verdict could be impeached based on a juror's mental process at the time of deliberation, no verdict would be safe." *Id.* (citation modified).

¶21        As applied to these facts, neither the defense investigator's signed statement purportedly documenting two jurors' accounts of the jury's deliberations nor the juror's signed statement ostensibly detailing her subjective recollections of the jury's deliberations constitutes competent evidence to impeach the first-degree murder verdict. *Id.* at ¶ 61. ("Statements by jurors about their own or another's subjective feelings, developed during trial, are not competent evidence to impeach a verdict."). Despite acknowledging the general principle that courts may not invade the province of the jury and scrutinize jurors' deliberations, Ketchner asserts ambiguity and inconsistency reflected in the first-degree murder verdict form exempt the defense investigator's statement and the juror's

statement from the general prohibition on juror impeachment evidence. Indeed, citing *Southern Pacific Railroad Co. v. Mitchell*, 80 Ariz. 50, 66 (1956), Ketchner contends the juror evidence demonstrates that the jury rendered the first-degree murder verdict "by reason of a mistake."

¶22        In *Southern Pacific Railroad*, a jury signed two verdict forms in favor of the plaintiff but entered an amount of damages only for count one, leaving the damages amount blank on the verdict form for count two—an "omission [that] was not discovered until after the jury had been discharged." 80 Ariz. at 65. Upon receiving affidavits from all twelve jurors stating their intent to award damages on both counts, the superior court granted the plaintiff's motion to amend the verdict to include an award of damages on count two. *Id.* Our supreme court upheld the amended verdict, reasoning the jurors' affidavits were "admissible to show that the verdict, as received and entered of record, by reason of a mistake d[id] not embody the true finding of the jury or to remove an ambiguity." *Id.* at 66 (citation modified).

¶23        This case is readily distinguishable from *Southern Pacific Railroad* because unlike the challenged verdict in that case, here, the jury's first-degree murder verdict is not facially defective, ambiguous, or inconsistent with the jury's other verdict. To be sure, the jurors expressed confusion concerning the first-degree murder instructions during their deliberations, but the superior court, with counsels' approval, provided clarifying instructions. We presume the jury followed the court's instructions. *See State v. Allen*, 253 Ariz. 306, 334, ¶ 62 (2022). Moreover, contrary to Ketchner's contention, the jury's findings, as outlined in the murder verdict form, are wholly consistent with the superior court's supplemental instructions and do not suggest any lingering juror confusion. In fact, given the jury's verdicts finding Ketchner guilty of both first-degree burglary and second-degree murder, a *not guilty* verdict on felony murder *would have been* legally inconsistent and contradictory.

¶24        We also find no merit to Ketchner's assertion that the superior court had a duty to *sua sponte* poll the jurors. According to Ketchner, the court's failure to do so casts doubt on the validity of the first-degree murder verdict, but the record clearly reflects that Ketchner waived his right to poll the jury. In fact, at the hearing on the motion to vacate the judgment, defense counsel told the court he made a "strategic" choice not to poll the jurors. Equally important, Ketchner cites no evidence to support his speculation that polling the jury may have produced a different result.

¶25 In sum, Ketchner failed to support his motion to vacate with any competent evidence, and the record—particularly the final jury instructions, the supplemental deliberation instructions, and the verdict forms—reveals no anomalies or ambiguities justifying judicial scrutiny of the jury's deliberative process. The superior court did not abuse its discretion by denying Ketchner's motion to vacate the judgment.

## CONCLUSION

¶26 We affirm.



**MATTHEW J. MARTIN** • **Clerk of the Court**
**FILED**: JR